**GLOBE READERS SERVICE, INC., et al., Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 13010.**

United States Court of Appeals Seventh Circuit.

Jan. 3, 1961.

Donald D. Martin and William N. Kenefick, Michigan City, Ind., for petitioners.

Alan B. Hobbes, Asst. General Counsel, Federal Trade Commission, Thomas F. Howder, Attorney, Washington, D. C., Daniel J. McCauley, Jr., General Counsel, John W. Carter, Jr., Attorneys for Federal Trade Commission, Washington, D. C., for respondent.

Before SCHNACKENBERG, CASTLE and MAJOR, Circuit Judges.

CASTLE, Circuit Judge.

Globe Readers Service, Inc., and Warren E. Brubaker, William P. Barry and James Riley, individually and as officers of the corporation, petitioners, seek review of a cease and desist order of the Federal Trade Commission, respondent. Our jurisdiction is invoked pursuant to 15 U.S.C.A. § 45(c). The petitioners were charged with violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45(a) (1) [1]. The hearing examiner's initial decision dismissed the complaint. On appeal the Commission made its own findings of fact, conclusion and order.

The order directs petitioners and petitioners' representatives, in connection with the sale of subscriptions for magazines, to cease and desist from:

"A. Soliciting and accepting magazine subscriptions which respondents are not authorized to solicit.

"B. Refusing to refund payments received for subscriptions for magazines which are undeliverable.

"C. Requiring customers to accept the substitution of magazines other than those subscribed and paid for."

The complaint on which the order was predicated, naming petitioners as respondents, charged, *inter alia*, that:

"In many instances respondents' solicitors sell subscriptions for magazines which are not on respondents' authorized list of magazines and are undeliverable. In these instances, respondents refuse to refund the customers' money and, in order to obtain some benefit for the money expended, such customers are required to accept a substitute magazine from the authorized list which they would not have otherwise ordered or accepted."

By their answer petitioners denied these charges and affirmatively alleged that the dealers or subscription crew managers are not employees of petitioners but are independent contractors.

The contested issues are:

1. Whether there is substantial evidence to support the commission's findings.

---

[1] Sec. 5(a) (1) "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful". Sec. 5 (a) (6) "The Commission is empowered and directed to prevent persons, partnerships, or corporations, * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

2. Whether the commission applied the correct legal criteria in concluding that under the facts petitioners are responsible for the acts and practices of the solicitors in the latter's solicitation of magazine subscriptions.

The facts as found by the commission insofar as pertinent to these issues may be summarized as follows:

The corporate petitioner Globe Readers Service, Inc., maintains its home office in Michigan City, Indiana. Petitioners Brubaker, Barry and Riley are officers of Globe.

The unlawful practices complained of arose in petitioners' conduct of its magazine subscription business. Certain publishers authorize petitioners to obtain subscriptions for their magazines from the public. To solicit such subscriptions, petitioners engage the service of individuals designated as "dealers" or "subscription crew managers." These, in turn, select "solicitors" who conduct the actual door-to-door canvassing of the public. In this manner, petitioners' subscription sales operations are carried on throughout the various states.

When subscriptions are sold, the solicitors record the orders on forms provided and accept payment from the customers. The orders and payments are subsequently turned over to petitioners' crew managers. After deducting commissions for themselves and the solicitors, the crew managers forward the monies along with the orders to petitioners. Petitioners are responsible for arranging with the various magazine publishers to see that the subscriptions are honored.

On many occasions the solicitors take subscriptions for magazines which are not on petitioners' authorized list. Orders and payments therefor are nevertheless transmitted to petitioners' home office. When customers do not receive the magazines ordered, they direct inquiry to petitioners' office, or cause inquiry to be made on their behalf by Better Business organizations.

After accepting payment for the sale of unauthorized subscriptions, petitioners send a form letter to these customers requesting them to accept a substitute periodical. Petitioners make no mention of a refund in this correspondence, even if the customer has requested one. Their sole effort is directed toward obtaining a subscription from the authorized list and they are often successful. To attain this objective, petitioners have for a time even represented to subscribers that a refund is not obtainable because commissions and allowances were deducted at the time of sale and cannot be recovered. If the subscribers persevere long enough in their efforts, however, they can eventually get their money back in spite of petitioners' attempts to dissuade them.

On the basis of these findings the commission concluded that the acts and practices of petitioners constituted unfair and deceptive acts and practices and unfair methods of competition in violation of the Federal Trade Commission Act.

■ The findings of the commission, if supported by substantial evidence on the record considered as a whole, are conclusive. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L.Ed. 456. They may not be set aside because the reviewing court would have drawn different inferences. N. L. R. B. v. Southern Bell Telephone & Telegraph Co., 319 U.S. 50, 60, 63 S.Ct. 905, 87 L.Ed. 1250. In Universal Camera it was pointed out (340 U.S. 496–497, 71 S.Ct. 469) that the "substantial evidence" standard is not modified in any way because of disagreement between the Board and its examiner but that it is recognized "that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion."

■ The instant case presents no issue of credibility and the findings are in a large part based upon the testimony of Globe's own officers. We have care-

fully reviewed the record. The findings and conclusions of the Commission are without substantial support insofar as they are relied upon as establishing that petitioners have pursued "unfair or deceptive acts or practices" in their operations.

In reaching this conclusion we are not disposed to disturb the commission's factual findings bearing on the relationship between petitioners and the solicitors. Likewise the commission applied the correct legal criteria in determining petitioners' responsibility, for the purpose here involved, for the acts and practices of the solicitors. An important feature of petitioners' relationship with the solicitors is the "Certificate of Authorization" furnished each solicitor for his use in house-to-house canvassing. This is a letter-size document impressively designed, bearing the description and signature of the solicitor, and signed by the crew manager. It proclaims that the solicitor "is authorized to make personal interviews for the purpose of obtaining new and renewal orders for periodicals listed on the official order forms of Globe Readers Service, Inc.". In addition, correspondence with dissatisfied customers is conducted out of Globe's headquarters office and when refunds are made they are made by Globe. The record amply establishes that the activities of the crew managers and solicitors are an integral part of petitioners' business operation. In its correspondence with customers Globe has variously referred to the solicitor as "the agent" and "our representative".

Whatever the relationship between petitioners and the crew managers and solicitors may be when regarded for other purposes we are of the opinion that this relationship, for the purpose here under consideration, is such that petitioners are not in a position to shed responsibility for the acts and practices of the solicitor. International Art Company v. Federal Trade Commission, 7 Cir., 109 F.2d 393; Steelco Stainless Steel, Inc. v. Federal Trade Commission, 7 Cir., 187 F.2d 693 and Goodman v.

Federal Trade Commission, 9 Cir., 244 F. 2d 584.

While we are of the opinion that petitioners are responsible, for the purpose here involved, for the subscription activities of the solicitors we do not find substantial evidence in the record supporting the commission's ultimate conclusion that a violation of the Federal Trade Commission Act was established.

There is evidence that on those occasions when a solicitor sold a subscription to a magazine not on petitioners' authorized list a form letter was used in reply to inquiries of the customers who complained about failure to receive the publication they paid for, including those seeking a refund. The letter made no mention of a refund but advised the subscriber that the solicitor was not authorized to accept the order for the magazines selected and requested that a new selection be made from the authorized list of magazines. But no evidence was presented as to the frequency of sales by the solicitors of magazines not on the authorized list, and although some crew managers had from 16 to 25 deductions from their individual accounts during an eleven month period representing their commissions on refunds petitioners made, no showing was made as to the frequency of such sales by any particular solicitor or solicitors or the total number of solicitors then working. There is nothing in the record to indicate that petitioners either encouraged or tacitly approved the action of any solicitor in obtaining orders for magazines not on the authorized list. To the contrary there is testimony that crew managers were instructed not to sell subscriptions to magazines not on the authorized list. That there was testimony that in those instances where subscriptions were obtained to publications not on the list, many of such subscribers did, after receipt of petitioners' letter, then make a selection from the authorized list, after first having asked for a refund, does not in our opinion show pursuit by petitioners of an unfair and deceptive prac-

tice. The record does not establish a pattern showing an attempt was made by petitioners to obtain an unauthorized subscription where the person solicited did not desire the authorized magazines, with the intent of later prevailing on such subscriber to accept a substitute from the authorized list. There was testimony that for a time some of such customers had been informed that Globe was not in a position to make a refund due to the fact that commissions and allowances were deducted at the time of the sale and could not be recovered. Again, the record is barren as to the number or percentage of cases in which such information was given.

It may well be that petitioners were engaged in a course of conduct which constituted an unfair and deceptive practice within the prohibitions of the Federal Trade Commission Act, but such a conclusion does not find substantial support in the record made before the commission. The order of the Federal Trade Commission is reversed and set aside.

Order reversed and set aside.