SNOOK et al., Appellees,

v.

FORD MOTOR COMPANY et al.; Beau Townsend Ford, Appellant.

[Cite as *Snook v. Ford Motor Co.* (2001), 142 Ohio App.3d 212.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18483.

Decided April 6, 2001.

*Ronald L. Burdge*, for appellees.

*Patrick K. Dunphy*, for appellant.

FREDERICK N. YOUNG, Judge.

Beau Townsend Ford is appealing the judgment of the trial court finding that it was a credit services organization in its conduct towards Cynthia and Randy Snook and was thus liable to the Snooks under the Ohio Credit Services Organization Act.

On August 27, 1997, Cynthia and Randy Snook, the appellees, purchased a used 1994 Ford Bronco from Beau Townsend Ford ("appellant"). The Snooks transferred possession and title of a 1995 Ford F–150 truck as well as $500 at the time of purchase. Appellant represented that it could and did, in fact, assist the Snooks in obtaining an extension of credit and financing from Ford Motor Credit Company. Appellant was never licensed as a credit services organization under the law.

On June 23, 1999, the Snooks filed their complaint against the appellant, Ford Motor Credit Company, and Ford Motor Company. On October 4, 1999, the Snooks filed a motion for partial summary judgment on the fourth claim of the complaint, which alleged a violation of the Credit Services Organization Act ("CSOA"). The Snooks complained that the appellant failed to register under the CSOA and failed to provide the Snooks with a notice of a right to cancel the agreement within three days. The appellant opposed the motion, but on January 6, 2000, the trial court sustained the Snooks' motion for partial summary judgment on their fourth claim. All of the Snooks' remaining claims against the appellant were later dismissed in a grant of summary judgment to the appellant. On August 1, 2000, the trial court issued a judgment entry on the fourth claim in the Snooks' favor against appellant, which then filed this timely appeal.

Appellant's sole assignment of error is:

"The trial court committed prejudicial error by granting summary judgment against appellant on the claim of appellees under the Ohio Credit Services Organization Act, Ohio Revised Code 4712.01 *et seq.*"

When reviewing a trial court's grant of summary judgment, an appellate court conducts a *de novo* review. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245. "*De novo* review means that this court

uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, 1026, citing *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 356–357, 413 N.E.2d 1187, 1190–1191. Thus, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158.

Summary judgment can be appropriately granted where (1) "there is no genuine issue as to any material fact; (2) * * * the moving party is entitled to judgment as a matter of law; and (3) * * * reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; see, also, Civ.R. 56(C). The movant has the burden to prove that no genuine issues of material fact exist by specifically pointing to evidence in the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which show that the nonmovant has no evidence to support its claims. *Harless, supra; Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274; Civ.R. 56(C).

Prior to June 29, 1999, the CSOA defined, a "credit services organization" ("CSO") as:

"any person that charges or *receives, directly from the buyer,* money or other valuable consideration readily convertible into money, *and* that sells, *provides,* or performs, or represents that the person can or will sell, provide, or perform, *any of the following services:*

"(a) Improving a buyer's credit record, history, or rating;

"(b) *Obtaining an extension of credit for a buyer;*

"(c) *Providing advice or assistance to a buyer in connection with division (C)(1)(a) or (b) of this section;*

"(d) Removing adverse credit information that is accurate and not obsolete from the buyer's credit record, history, or rating;

"(e) Altering the buyer's identification to prevent the display of the buyer's credit record, history, or rating." (Emphasis added.) R.C. 4712.01(C)(1).[1]

---

**1.** The statute has been amended to define a CSO as "any person that, *in return for* the payment of money or other valuable consideration readily convertible into money *for* the following services, sells, provides, or performs, or represents that the person can or will sell, provide, or

█ The CSOA goes on to define a "buyer" as "an individual who is solicited to purchase or who purchases the services of a [CSO] for purposes other than obtaining a business loan as described in division (B)(6) of section 1343.01 of the Revised Code." R.C. 4712.01(A). In order for a plaintiff to assert a successful claim against a defendant under the CSOA, the plaintiff must qualify as a buyer and the defendant qualify as a CSO. *Tran v. Ricart Jeep Eagle, Inc.* (Jan. 26, 2000), Franklin C.P. No. 98CVH03–2533, unreported. "[E]ven if defendant meets the criteria set forth in the statute for classification as a ['CSO'], plaintiff must still demonstrate that he is a 'buyer,' and thus a member of the class that the CSOA seeks to protect." *Blinkoff v. Ricart Ford, Inc.* (Jan. 18, 2000), Franklin C.P. No. 98CVH03–2280, unreported.

█ The statutory definition of "buyer" requires that the individual "purchase" the services of the CSO. R.C. 4712.01(A). "Purchase" is defined as "[t]o obtain in exchange for money or its equivalent: BUY." Webster's Second New College Dictionary (1999) 899. Thus, in order to qualify as a "buyer" under the statute, an individual must obtain the services of the CSO listed in R.C. 4712.01(C)(1) in exchange for money or its equivalent. ·

The trial court reasoned that the Snooks had purchased a "bundle" of goods during the exchange with the appellant. The trial court found that the Snooks transferred a vehicle, with a significant amount of equity, and $500 in exchange for the used 1994 Bronco, the inseparable package of credit services, and other concomitants. . Thus, the trial court concluded that the amount the Snooks transferred purchased the entire bundle of goods, including the credit service of assisting the Snooks in obtaining an extension of credit. We do not agree with this reasoning.

In the instant case, even though the trial court had before it evidence that the credit services and the vehicle were connected in a bundle of goods, the trial court did not have any evidence that the appellant was receiving compensation for the credit services it was performing. The Snooks presented no evidence to the trial court that the appellant was being compensated for the credit services it performed in any manner. The trial court had no evidence that the cost of the credit services were included in the cost appellant charged for the vehicle or that a separate fee was charged for the services. In order to qualify as a buyer, the Snooks must show a transfer of money or its equivalent to appellant specifically for the credit services performed.

---

perform, one or more of the following services: \* \* \*." (Emphasis added.) R.C. 4712.01(C)(1).

■ The only evidence offered before the trial court was the affidavit of Ms. Snook, in which she swore that she would not have transferred $500, traded in her vehicle, or purchased the Bronco were it not for the appellant obtaining her an extension of credit. However, we find this to be self-serving and insufficient evidence that she "purchased" appellant's credit services. Ms. Snook would have us believe the doubtful concept that she gave the appellant $500 and her trade-in vehicle solely for the appellant's assistance in helping her obtain an extension of credit from Ford Motor Credit Company. Although appellant had an opportunity to offer into evidence an affidavit stating that the credit services it offered the Snooks were gratuitous but failed to do so, the subjective belief of Ms. Snook that she bought the credit services is insufficient on its own to prove that she transferred money in exchange for the credit service. To find otherwise would be to invite every individual who ever purchased or leased a vehicle at an auto dealership, which even slightly assisted the individual in obtaining an extension of credit, to reflect and in hindsight determine that were it not for the auto dealer's slight assistance in obtaining credit the individual would not have purchased the vehicle or transferred any money to the auto dealer. If this hindsight, self-serving testimony were all that was necessary to make such an auto dealer liable under the CSOA, then Ohio courts would be besieged with a flood of litigation against auto dealers by past customers.

Therefore, in order for the Snooks to be granted their motion for summary judgment, they must offer evidence that they transferred money or its equivalent to the auto dealer specifically for the services of a CSO which it offered. The Snooks must show that they either paid a separate fee for the CSO services or that the cost of the credit services was included in the cost of the vehicle in order to prove that the credit service was "purchased" and not gratuitous. Without evidence of a transfer of money or its equivalent to appellant specifically for the credit services appellant performed, the Snooks could not prove that they had "purchased" the services of appellant as a CSO. Therefore, the Snooks could not demonstrate as a matter of law that they were "buyers" under the statute.

Since genuine issues of material fact remain as to whether the Snooks meet the statutory definition of a "buyer," the trial court improperly granted summary judgment in the Snooks' favor. Thus, we need not address whether the appellant met the statutory definition of a CSO or if the amendment to the statute could be applied retroactively. The judgment of the trial court is reversed and the case is remanded.

*Judgment reversed*
*and cause remanded.*

BROGAN, J., concurs.

WOLFF, P.J., dissents.

WOLFF, Presiding Judge, dissenting.

I respectfully dissent. The majority has not addressed whether Beau Townsend Ford is a CSO but has determined only that there are material issues of fact on the question of whether the Snooks were "buyers" within the meaning of R.C. 4712.01(A). In my opinion, the unrebutted affidavit of Cynthia Snook is sufficient to establish the Snooks' "buyer" status under the statute. Because the statutory definition of "buyer" requires the purchase of certain defined services *from a CSO*—see R.C. 4712.01(C)(1)—I believe it is necessary to add that the unrebutted affidavit of Mrs. Snook is, for me, sufficient to establish Beau Townsend Ford's CSO status. Based on the statute in effect at the time the parties dealt with each other and the record in *this* case, I would affirm.