**Chester BROWN and Melanie Brown, Plaintiffs,**

v.

**MORTGAGESTAR, INC., Alliance Funding, Superior Bank FSB, and Fairbanks Capital Corp., Defendants.**

**No. CIV.A. 2:02–0041.**

United States District Court,
S.D. West Virginia,
Charleston Division.

April 4, 2002.

Daniel F. Hedges, Esq., Charleston, for Plaintiffs.

Kenneth E. Webb, Esq., Bowles Rice McDavid Graff & Love, Charleston, Donald A. Rea, Esq., Alison E. Goldenberg, Esq., Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for Defendant MortgageStar.

William W. Booker, Esq., John R. McGhee, Jr., Esq., Kay, Casto & Chaney, Charleston, David M. Souders, Esq., Cynthia G. Swann, Esq., Weiner Brodsky Sidman Kider, Washington, DC, for Defendant Fairbanks.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the motions of Defendant MortgageStar, Inc. (MortgageStar) for partial dismissal or, alternatively, for partial summary judgment and Fairbanks Capital Corp. (Fairbanks) to dismiss. For reasons discussed below, MortgageStar's motions are **GRANTED** in part and **DENIED** in part; Fairbanks' motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts stated in the Complaint are presumed to be true for purposes of this motion. Plaintiffs, husband and wife, contacted an agent of MortgageStar in July, 2000 [1] after they viewed its television advertisement offering home equity loans. MortgageStar's agent met with the Browns at Hardee's in Chapmanville, Logan County, West Virginia, and offered a loan at 8.9 percent annual percentage rate (APR). The Browns submitted an application for the loan to the agent, but no copy was provided to them, nor were they told MortgageStar and its agent were brokering the loan for another lender.

The Browns met the agent for closing on December 8, 2000 at the same location. The lender, Alliance Funding, had prepared and forwarded to the Plaintiffs all the documents necessary to close the loan. These documents were backdated to December 7, 2000. At the December 8 meeting, the Browns disputed the loan APR because it was higher than the one initially offered. The agent encouraged them to sign the papers anyway, saying, "Go ahead and sign and we'll adjust the rate in six months." Plaintiffs accepted the loan, but called the agent the next day to cancel. After the agent reassured them the APR would be reduced in six months, the Browns decided not to cancel the loan. Defendants did not pay off the Browns' outstanding loans as represented in the closing documents, but simply kept the money. On November 27, 2001 the Browns gave cancellation notice, but Defendants did not respond.

MortgageStar moved to dismiss *Counts* I, II, III, IV, VIII, and IX of the Amended Complaint for failure to state a claim under *Rule* 12(b)(6) or, alternatively, for summary judgment.[2] Fairbanks Capital also moved to dismiss pursuant to *Rule* 12(b)(6).

Plaintiffs also assert *Counts* VIII and IX–A, pertaining to TILA, do not refer to MortgageStar. Accordingly, MortgageStar's motions to dismiss these counts against it are **DENIED** as moot.

*Count* IX–B alleges fraudulent misrepresentation that the interest rate would be reduced after six months. As the facts are recounted, this count appears to implicate MortgageStar as the entity that brokered the loan and allegedly made the misrepresentations. Also, MortgageStar makes no argument the count for fraudulent misrepresentation should be dismissed. Accordingly, any motion to dismiss *Count* IX–B as against MortgageStar is **DENIED.**

---

1. Paragraph 26 of the Complaint states this date to be March, 2000.

2. The Amended Complaint contains no *Count* VII and two *Counts* IX, the first of which alleges Truth in Lending Act (TILA) violations (IX–A) and the second of which alleges fraudulent misrepresentation (IX–B). The Amended Complaint also references "Defendant Lockhart and First Security," who are not named as defendants or otherwise identified. (Compl. ¶ 47.)

    *Count* I names only Defendant Alliance Funding, which prepared the loan documents, and alleges unauthorized practice of law. Because MortgageStar is not named nor in any way implicated in this count, its motion to dismiss is **DENIED** as moot with regard to *Count* I.

## II. DISCUSSION

### A. Motions to Dismiss

Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to *Rule* 12(b)(6), *Federal Rules of Civil Procedure:*

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir. 1996); *Gardner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996). It is through this analytical prism the Court evaluates Defendants' motions.

### B. Summary Judgment

*Rule* 12(b) also provides:

> If, on the motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b). Under *Rule* 56(c), summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### C. MortgageStar

■ *Count* II alleges violations of Article 6C of the West Virginia Consumer Credit and Protection Act, pertaining to Credit Services Organizations, 46A–6C–1, *et seq.* A credit services organization includes,

> a person [3] who, with respect to the extension of credit by others and in return for the payment of money or other valuable consideration, provides, or represents that the person can or will provide, any of the following services:
>
> . . .
>
> (2) Obtaining an extension of credit for a buyer; or
>
> (3) Providing advice or assistance to a buyer with regard to subdivision . . . (2) of this subsection.

W. Va.Code § 46A–6C–2(a). The parties agree that under this definition MortgageStar was acting as a credit services organization. The statute continues:

> (b) The following are exempt from this article:
>
> (1) A person authorized to make loans or extension of credit under the law of this state or the United States who is subject to regulation and supervision by this state or the United States, or a lender approved by the United States secretary of housing and urban development for participation in a mortgage insurance program under the National

---

**3.** "Person" includes an organization, W. Va. Code § 46A–1–102(31), and "organization" includes a corporation. *Id.* at § 46A–1–102(29).

Housing Act (12 U.S.C. Section 1701 et seq.) [.]

W. Va.Code § 46A–6C–2(b).

MortgageStar presents the affidavit of its President, Richard A. Weiner, which avers MortgageStar was licensed as a mortgage lender by the State, effective August 7, 2000, and approved by the U.S. Secretary of Housing and Urban Development (HUD) to act as a non-supervised lender beginning September 1, 1999. Thus, MortgageStar argues, it is exempt from the provisions of Article 6C.

Plaintiffs respond this interpretation would wipe out application of the broker disclosure law. According to Plaintiffs, if the Article 6C exemption were interpreted to mean that any broker engaging in brokering activities, which also happens to have a lending license in its own name, is exempt from law, the intent of the law would be undercut. Plaintiffs claim the intent of the exemption was that lenders, while lending their own money, are exempt. Plaintiffs provide no authority for this interpretation and, in fact, the plain language of the law does not support it.[4]

As quoted above, a credit services organization is a person who, *"with respect to the extension of credit by others* and in return for payment of money or other valuable consideration, provides … the following services."  W. Va.Code § 46A–6C–2(a)(emphasis added).  By definition, organizations subject to Article 6C are acting "with regard to the extension of credit by others," that is, not lending their own money.  Nor does any other portion of the article alter this interpretation.  Accordingly, because MortgageStar was a HUD-approved lender during the period in which these events are alleged to have occurred, MortgageStar is exempt from the requirements of Article 6C, pursuant to W. Va.Code § 46A–6C–2(b)(1).[5]

Because the Court considered materials outside the pleadings, that is, the affidavit of MortgageStar's president, the motion is considered as one for summary judgment, and MortgageStar's motion for summary judgment on *Count* II is **GRANTED.**

### D.  Counts III and IV

With regard to *Counts* III and IV, MortgageStar moves to dismiss the class claims

---

**4.**  Plaintiffs moved to file a surreply. That motion is GRANTED and the Court has considered the attached surreply.  In that document, Plaintiffs argue the Division of Banking "requires brokers comply with Article 6C, Chapter 46A."  (Pls.' Surreply at 2.)  Plaintiffs provide no authority for this proposition.

The only relevant statute the Court can locate requires mortgage brokers, as well as lenders and servicers, to register and comply with all requirements in Article 6C, Chapter 46A, only if they charge or receive money from a borrower "before completing performance of all services the licensee has agreed to perform for the borrower."  W. Va.Code § 31–17–8(k).  Where, as in the instant case, the broker fee is paid at the loan closing, this statute appears inapplicable.

**5.**  Some of Plaintiffs' claims under the Credit Services Organization Act have commonlaw equivalents.  For example, Plaintiffs' statuto-

ry claim concerning MortgageStar's alleged deceptive conduct with regard to the APR has a commonlaw equivalent in Plaintiffs' fraudulent misrepresentation count, *Count* IX–B.  Similarly, Plaintiffs' fraud allegation, *Count* VI, subsumes the statutory claim that MortgageStar charged the buyer solely for referral to a retail seller of credit, where the credit was substantially the same as that available to the general public from other sources.  *See* W. Va.Code § 46A–6C–3(2).

Nevertheless, the Court realizes that many other apparent protections provided by the Credit Services Organization article, such as broker disclosure requirements and separate contracts for provision of broker services including a prominent cancellation notice, are lost in situations such as those presented by the instant case.  The undersigned, however, is duty bound to interpret the plain language of the statute.

brought on behalf of a purported class of all consumers who (a) signed a loan agreement in West Virginia with the Defendant Alliance Funding in the five years immediately preceding the filing of the action, (b) where the contracts were solicited by a mortgage broker without written disclosure of cost of services and services to be performed, and (c) the agreements included payment of a mortgage broker fee. The affidavit from MortgageStar's President avers MortgageStar brokered only the Browns' loan in West Virginia in 2000 and brokered no loans with Alliance in West Virginia from 1996 through 1999 nor in 2001.

Because no motion for class certification is pending at this time, the Court declines to consider the issue. MortgageStar's motions for dismissal on *Counts* III and IV are **DENIED without prejudice** and may be renewed at the appropriate time.

### E. *Fairbanks Capital Corp.*

■ Fairbanks moved to dismiss the Complaint against it pursuant to *Rule* 12(b)(6), claiming it is only a subsequent servicer of the loan and could have had no part in the alleged misconduct.[6] Plaintiffs counter that, according to the limited information provided, Fairbanks took assignment of the loan in October, 2001. Thus far in discovery, Fairbanks has refused to reveal who holds the loan, that is, who is the assignee, if it is not. Further, Fairbanks services the loan, has made all collection attempts against the Plaintiffs, and is the current functional holder of the loan.

Assignees are liable for statutory damages for TILA violations only when the violations are proven to be apparent on the face of the documents assigned. *See* 15 U.S.C. § 1641(a). The Complaint lists several alleged discrepancies in principal

amount and APR among the TIL disclosure statement, deed of trust, and note. These alleged discrepancies, apparent on the face of the documents, are sufficient to hold the assignee liable for TILA violations. Fairbanks' motion is **DENIED** without prejudice and may be reasserted once discovery reveals the holder of the loan and, if that holder is not Fairbanks, any relations, contractual or otherwise, between it and Fairbanks, which may be relevant to this action.

■ Fairbanks also moves to dismiss Plaintiffs' claim for rescission under *Count* IX–A because it does not allege Plaintiffs gave written notice of cancellation, and "cryptically references more than one transaction." (Fairbanks' Reply Mem. at 4.) Under notice pleading, a plaintiff must provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Additionally, "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading … are required." Fed.R.Civ.P. 8(e).

> The Complaint alleges:
>
> 11. (b) The plaintiffs gave cancellation of the transactions on November 27, 2001. The notice directed all further communications to Plaintiff's counsel.
>
> (c) This notice was received by the defendants.

(Compl.¶ 11(b), (c).) *Count* IX–A alleges "The Defendant took no appropriate action in response to the Plaintiffs' timely cancellation, in violation of 15 U.S.C. § 1635 and Regulation Z, 12 C.F.R. § 226.23." These short and plain statements are sufficient to meet the requirements of *Rules* 8(a) and (e) and put the Defendants on notice as to the nature of the claim. As the party

---

6. Fairbanks moved to dismiss as well under *Rule* 9(b), which requires fraud be pled with particularity. Because Fairbanks is not named nor implicated in any of the fraud claims, this motion is DENIED as moot.

demanding payment from Plaintiffs, whether as holder of the loan or agent of the holder, i.e., servicer, Fairbanks would be the appropriate party to respond to and act upon the tendered rescission notice. Accordingly, Fairbanks' motion to dismiss Count IX–A against it is **DENIED.**

### III. CONCLUSION

MortgageStar's motions to dismiss *Counts* I, VIII, IX–A, and IX–B are **DENIED.** MortgageStar's motions to dismiss *Counts* III and IV are **DENIED** without prejudice. MortgageStar's motion for summary judgment on *Count* II is **GRANTED.** Fairbanks' motions to dismiss are **DENIED** without prejudice, except its motion to dismiss *Count* IX–A is **DENIED.** Plaintiffs' motion to file a sur-reply is **GRANTED.**

The Clerk is directed to send a copy of this Order to counsel of record and publish it on the Court's website at http://www.wvsd.uscourts.gov.