Philip RANNIS, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

FAIR CREDIT LAWYERS, INC.;
Peter L. Recchia, and Does
1 To 10, Defendants.

No. EDCV 06 0373 AG JCX.

United States District Court,
C.D. California.

May 23, 2007.

O. Randolph Bragg, Horwitz Horwitz & Associates, Chicago, IL, Robert H. Stempler, Robert Stempler Law Offices, Ontario, CA, for Plaintiff.

Gino P. Pietro, Pietro and Associates, Santa Ana, CA, for Defendants.

**ORDER DENYING DEFENDANT PETER L. RECCHIA'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF PHILIP RANNIS' MOTION FOR PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AGAINST DEFENDANT PETER L. RECCHIA**

GUILFORD, District Judge.

Before the Court are cross-motions for summary judgment, one filed by Plaintiff Philip Rannis ("Plaintiff") and the other filed by Defendant Peter L. Recchia ("Defendant"). Plaintiff has filed a Motion for Summary Judgment or Partial Summary Judgement in Favor of Plaintiff Against Defendant Peter L. Recchia ("Plaintiff's Motion"). Defendant has also filed a Motion for Summary Judgment ("Defendant's Motion"). After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court GRANTS Plaintiff's Motion and DENIES Defendant's Motion.

The gravamen of Plaintiff's Complaint is that Defendant engaged in credit repair services that violated the requirements of the Credit Repair Organizations Act at 15 U.S.C. sections 1679, et seq. Plaintiff also claims that these violations support Plaintiff's claim for relief under California Unfair Competition Law ("UCL") at the California Business and Professions Code sections 17200, et seq.

**BACKGROUND**

Defendant is an attorney licensed in California. (Declaration of Peter L. Recchia In Support of Opposition to Plaintiff's Motion for Summary Judgment ("Recchia Decl.") ¶ 18.) He represents clients associated with litigation and non-litigation matters relating to various consumer protection laws, state and federal unfair debt collection practices laws, and bankruptcy issues. (Recchia Decl. ¶ 3.) On December 12, 2003, Plaintiff entered into a contract with Defendant. (Recchia Decl., Ex. B.) According to the contract, Defendant was hired to achieve "maximally accurate" credit reports on Plaintiff's behalf. (Recchia Decl., Ex. B.) Although Defendant gave Plaintiff paperwork specifying that Plaintiff would make payments as early as January 28, 2004, (Declarations and Evidence in Support of Motion for Summary Judgment or For Partial Summary Judgment in Favor of Plaintiff against Defendant Peter L. Recchia, ("Plaintiff's Decl. in Support of his MSJ"), Ex. 2) Plaintiff made his first payment to Defendant on March 1, 2004. (Recchia Decl. ¶ 23.) Before March 1, 2004, Defendant performed and completed 27 events of legal work

activity on Plaintiff's behalf. (Recchia Decl., Ex. G.) After that time, Defendant performed more work on behalf of Plaintiff. (Declarations and Evidence Opposing Defendant Peter L. Recchia's Motion for Summary Judgment ("Plaintiff's Opposing Declaration"), Ex. 6, 10–19.)

## LEGAL STANDARD

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S.Ct. 2505. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. 2505.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322–23, 106 S.Ct. 2548. If the non-moving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir.2000).

## OBJECTIONS

Both Plaintiff and Defendant have made objections to evidence submitted in support of and in opposition to the cross-motions. The Court has read and considered each individual objection, and has not relied on any improper evidence in reaching its decision.

## ANALYSIS

### 1. PLAINTIFF'S CREDIT REPAIR ORGANIZATION ACT ("CROA") CLAIM

#### 1.1 Credit Repair Organization

Plaintiff claims that the undisputed evidence demonstrates that Defendant is a credit repair organization under 15 U.S.C. section 1679a(3)(A). Defendant claims that the undisputed evidence establishes that he is not a credit repair organization and he has no corresponding duty to comply with section 1679. The Court agrees with Plaintiff.

Section 1679a(3)(A) of the CROA defines "credit repair organization" as an organization that (i) used any instrumentality of interstate commerce or the mails to (ii) sell, provide, or perform (or represent that it could do so); (iii) in return for the payment of money or other valuable consideration; (iv) services or advice about services designed to improve a consumer's credit record, credit history, or credit rating. 15 U.S.C. § 1679a(3)(A).

■ Plaintiff argues that the evidence establishes that Defendant is a credit repair organization. First, Plaintiff states that it is undisputed that Defendant used interstate commerce and the United States mail regarding client advice and representation to correct his clients' credit reports. Plaintiff states that Defendant admitted this fact in the Answer to the Complaint. But while Defendant admits to using the United States mail, he does not explicitly admit to the prescribed purpose. (Request to Take Judicial Notice in Support of Motion for Summary Judgment or for Partial Summary Judgment in Favor of Plain-

tiff against Defendant Peter L. Recchia, Ex. B ¶ 7.) Thus, the Court does not find that Defendant's response in his Answer admits this particular fact. Rather, Plaintiff establishes that Defendant uses the mails by the fact that he advertised credit improvement in the Penny Saver sent via United States mail to several counties in Southern California. (Plaintiff's Decl. in Support of his MSJ Ex. 8.) It is irrelevant that the Penny Saver was only sent within California, as Defendant argues, because section 1679a(3)(A) only requires use of the mails regardless of destination. Also, Plaintiff establishes Defendant's use of the mails by the undisputed fact that Defendant uses the mails to communicate with his clients. (Defendant's Statement of Genuine Issues in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's SUF") ¶ 2.) Thus, Plaintiff can establish that Defendant satisfies the first element required of a credit repair organization.

 Second, Plaintiff claims that he has established that Defendant sells, provides, or performs services or advice about services designed to improve a consumer's credit record, credit history, or credit rating. Plaintiff provides evidence that Defendant advertised in several counties that his office could "Improve Your Credit Score Now!" in the PennySaver. (Plaintiff's Decl. in Support of his MSJ, Ex. 5, 26:11–17; Ex. 8.) Plaintiff also cites his contract that he signed with Defendant, which stated that Defendant would perform services "with the purpose of achieving the goal of a maximally accurate credit report on Client's behalf." (Plaintiff's Decl. in Support of his MSJ, Ex. 1.) While Defendant disputes how this evidence should be interpreted, Defendant does not provide any material disputes of fact as to the existence of either the advertisement or the contract, and the Court finds that the advertisement and the contract estab-

lishes the second and fourth required elements under the statute.

In his defense, Defendant claims that the advertisement addressed "clients who sought representation associated with litigation and non-litigation matters under various consumer protection laws ... state and federal unfair debt collection practices law and in regards to bankruptcy related issues." (Defendant's SUF ¶ 2.) But the advertisement does not specify which statutes it aims to address, and by its terms, it is a representation of a credit repair organization under the statute. The Court finds that Defendant's advertisement stating "BAD CREDIT REPORT ... Improve Your Credit Score Now!" is certainly a representation that Defendant would provide a service for the "express purpose of improving any consumer's credit record, credit history, or credit rating." 15 U.S.C. § 1679a.

Similarly, the language of the contract also establishes that Defendant represented he would provide a service for the implied purpose of improving the consumer's credit record, credit history, or credit rating. While the contract obviously attempts to use phrases that correlate with the language of other consumer protection statutes, such as "maximum possible accuracy" from 15 U.S.C. section 1681e(b), the contract implicitly informs the consumer that Defendant will attempt, if at all possible, to improve the consumer's credit record, credit history, or credit rating. This also is sufficient to fall within the definition of a credit repair organization under 15 U.S.C. § 1679. Thus, both the terms of the contract and the advertisement establish that Defendant sells, provides, or performs services or advice about services designed to improve a consumer's credit record, credit history, or credit rating.

 Lastly, Plaintiff claims that he has established that Defendant satisfies the re-

maining element of the statute, which concerns consideration. The contract itself states that Defendant requires $499 for his services described in the contract. (Plaintiff's Decl. in Support of his MSJ, Ex. 1.) Defendant also admits that he received $474 from Plaintiff for his services. (Recchia Opposition Decl. ¶ 23.) To rebut this point, Defendant claims that Plaintiff "did not 'buy' credit repair services from [Defendant], so he is not a 'buyer' under the provisions of 15 U.S.C. 1679(b)(1)." (Defendant, Peter L. Recchia's, Reply to Plaintiff's Opposition to Motion for Summary Judgment; Memorandum of Points and Authorities 6:7–14.) But the authority cited by Defendant does not address the construction of the CROA, but rather the interpretation of an Ohio statute which has a more limited definition of a buyer. *Snook v. Ford Motor Co.*, 142 Ohio App.3d 212, 216, 755 N.E.2d 380 (2001). This definition is not relevant to the CROA, which does not have any such definition. Here, the Court finds that the term "buyer" should be interpreted by its ordinary meaning to signify a consumer, and Plaintiff is a buyer of credit repair services as established by the fact that he paid for these services.

Thus, Plaintiff has established that Defendant meets the statutory requirements of a credit repair organization under 15 U.S.C. 1679a(3). He has established that Defendant used the United States mail to offer credit repair services to individuals for a fee.

■ Defendant contends that even if Plaintiff can establish that Defendant meets all the elements of a credit repair organization, Defendant is not a credit repair organization. Defendant claims that he performed all of his services within the course and scope of the practice of law and not as a credit repair organization. To support this, Defendant first claims that the evidence establishes that Defendant was acting as an attorney. For example, Defendant relies on the contract signed by Plaintiff, which unequivocally states that "Attorney is neither a credit repair company nor a credit services organization." (Recchia Decl., Ex. B.) Defendant relies on this language for his proposition that Plaintiff hired him only as an attorney and not as a credit services organization. Defendant also argues that the letters Defendant sent to credit reporting agencies on plaintiff's behalf also establish that Defendant was acting within the course and scope of the practice of law as the letters were written in the form of legal demands. (Defendant Peter L. Recchia's Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Opposition") 6:1–18.) The Court is not convinced by this argument.

The CROA explicitly regulates the practice of providing any service with the express or implied purpose of improving any consumer's credit record, credit history, or credit rating, or providing advice or assistance related to such services. 15 U.S.C. § 1679a(3). Although Defendant may have been acting in his capacity as an attorney, he was still providing services with the goal of improving Plaintiff's credit rating. The Ninth Circuit has previously found that an attorney who offered credit repair services under the auspices of a law firm to consumers was a credit repair organization. *FTC v. Gill*, 265 F.3d 944, 950, 958 (9th Cir.2001.) Here, because Defendant was acting as a credit repair organization under the statute, the simple fact that he may have been performing nonlitigation services within the attorney-client relationship does not alter the significance of his actions. Moreover, any language in the contract that suggests the consumer is waiving his protection under the CROA "shall be treated as void; and . . . may not be enforced by any Federal or State Court or any other person." 15

U.S.C. § 1679f(a). Thus, the language of the contract does not alter Defendant's obligations under the CROA.

■ To rebut this, Defendant claims that an attorney is exempted from the CROA. Defendant states that as an attorney he is exempted from the provisions of California Civil Code sections 1781.1 et seq. (Defendant's Opposition 8:14–22.) Defendant states that "15 U.S.C. 1679 expressly recognizes the enactment of State laws governing credit repair activities, which includes California Civil Code Sec. 1789.1." (Defendant's Opposition 9:5–7.) Defendant cites the following provision of the CROA.

> This title [15 USCS §§ 1679 et seq.] shall not annul, alter, affect, or exempt any person subject to the provisions of this title [15 USCS §§ 1679 et seq.] from complying with any law of any State except to the extent that such law is inconsistent with any provision of this title [15 USCS §§ 1679 et seq.], and then only to the extent of the inconsistency.

15 U.S.C. § 1679j. Defendant states that "[t]he attorney/client relationship between them is thus subject to, and controlled by the exemption in California Civil Code Section 1789.12(b)(5), aside from any provision of 15 USC 1679." (Defendant's Opposition 9:16–20.)

Defendant's argument that the California statute controls the matters at issue and that the CROA must be read to include an exemption for attorneys must fail. First, as the Court has already stated, the Ninth Circuit has already found that an attorney may be liable for a violation of the CROA. *FTC v. Gill*, 265 F.3d at 950. Second, Defendant provides no applicable authority for the proposition that a federal statute should be altered or affected by the California statute.

To support his construction of the statute, Defendant cites to two inapposite cases which do not even involve the application of the CROA. In fact, one of Defendant's cases merely involves the interpretation of a state statute with a similar exemption for attorneys. *Brown v. Mortgagestar, Inc.*, 194 F.Supp.2d 473 (S.D.W.Va.2002). The other case Defendant cites comes from a Bankruptcy Court in Georgia. *In re Attorneys at Law and Debt Relief Agencies*, 332 B.R. 66 (Bankr. S.D.Ga.2005). This case interpreted an amendment to the Bankruptcy Code regulating debt relief agencies. While the Bankruptcy Court found that an attorney was not a "debt relief agency" under the relevant statute, that court reached this conclusion after conducting a statute-specific analysis that does not aid the Court here.

In contrast, Plaintiff cites to a case that provides the framework for the necessary analysis. The Ninth Circuit, interpreting how a provision substantially identical to 15 U.S.C. section 1679(j) in a federal act impacts a state statute regulating a similar area of law, stated that "[t]he philosophy behind both statutes is the protection of the consumer and it is clear that the Federal Act permits [the state] to go further than the Federal Act does to protect consumers so long as the [state] act is not inconsistent with the Federal Act." *Credit Data of Arizona, Inc. v. State of Arizona*, 602 F.2d 195, 198 (9th Cir.1979.) Here, both statutes are aimed at providing "prospective buyers of services of credit repair services with the information necessary to make an intelligent decision regarding the purchase of those services and to protect the public from unfair or deceptive advertising and business practices." 15 U.S.C. 1679; *See also* California Civil Code § 1789.11(c). 15 U.S.C. 1679j permits the states to create legislation that would provide more protection to consumers than the federal statute, as long as the states'

statutes are not inconsistent with the CROA.

If the California statute can be read as imposing a requirement that attorneys are exempted from the CROA, such a provision is inconsistent with the CROA. The CROA does not provide for any such exemption. Defendant also does not provide the Court with any reason why despite the statute's silence on any such exemption, the CROA should be interpreted to include one. Thus, to the extent that the California statute suggests that all attorneys are exempt from the behavior regulated by the CROA, the statute is inconsistent with the CROA and must be disregarded.

### 1.2 Violations of the CROA

Plaintiff claims that Defendant violated 15 U.S.C. sections 1679b(b), 1679c, 1679d, and 1679e(b). Defendant claims that he has not violated the CROA because "[t]o maintain a cause of action against a credit repair business, there must be some sort of fraudulent activity associated with representations regarding credit reporting and credit information." (Defendant's Opposition 15:13–15.) Essentially, Defendant argues that he has not engaged in a practice prohibited by 1679b(a). But Plaintiff does not allege that Defendant has committed a violation of that provision of the CROA. Thus, Defendant's lengthy argument relating to his lack of liability under 1679b(a) is irrelevant to the current motions. The Court now addresses the arguments relating to the alleged violations of sections 1679b(b), 1679c, 1679d, and 1679e(b).

### 1.2.1 1679b(b)

First, Plaintiff claims that Defendant violated 15 U.S.C 1679b(b), which prohibits a credit repair organization from charging or receiving "any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." Plaintiff claims that Defendant required payment before fully performing the service. To support this, Plaintiff states that Defendant required a downpayment or payment in full from Plaintiff before credit improvement services would be performed. Plaintiff provides the Court with the contract that specifies the services rendered by Defendant cost $499, and the Defendant is not obligated to perform any services until the entire fee is paid. (Plaintiff's Declaration in Support of his MSJ, Ex. 1.)

In response, Defendant states that despite any language in the contract, Plaintiff did not make any payment until March 1, 2004. (Recchia Opposition Decl. ¶ 23.) Defendant claims that all work required under the agreement was completed before that time. (Recchia Opposition Decl. ¶ 23.) But Plaintiff provides the Court with letters Defendant sent to Plaintiff detailing work that he had completed after March 1, 2004. (Plaintiff's Opposing Declaration, Ex. 6, 11, 15.) Also, Plaintiff provides the Court with letters sent by Defendant after that date. (Plaintiff's Opposing Declaration, Ex. 10, 12–14, 16–19.)

■ Plaintiff's evidence establishes that Defendant performed at least some additional services for Plaintiff by sending these letters after receiving payment for these services. While there appears to be some dispute about whether Plaintiff ever paid the full $499 as required by the Contract, Defendant does not present any evidence contradicting the fact that the actual amount paid was consideration for the services that Defendant later performed. Accordingly, Plaintiff has provided sufficient evidence that Defendant received money for the performance of services that Defendant agreed to perform before such service was fully performed, thus violating 15 U.S.C. section 1679b(b).

1.2.2 Violations of 15 U.S.C. 1679c, 1679d, 1679e,

 Plaintiff claims that Defendant admitted that the forms given to Plaintiff "did not contain some disclosures, terms, conditions, and/or forms described in 15 U.S.C. §§ 1679c, 1679d, 1679e." (Plaintiff's RJN, Ex. B at ¶ 11.) Defendant admitted in deposition that he gives clients only a few specific forms. (Plaintiff's Evidence Ex. 5:23:11–24:13.) It is undisputed that these forms do not contain the disclosures and forms required by 15 U.S.C. sections 1679c, 1679d, and 1679e. (Defendant's Genuine Issues in Opposition to Motion for Summary Judgment ¶ 20.) In response, Defendant contests that he should not be liable for these violations because to maintain a claim for relief under 15 U.S.C. 1679, "there must be some sort of fraudulent activity associated with representations regarding credit reporting and credit information." (Defendant's SUF ¶ 14.) To support this, Defendant cites *Costa v. Mauro Chevrolet*, 390 F.Supp.2d 720 (N.D.Ill.2005), as well as Congress' legislative intent. But *Costa* does not stand for this proposition, and Defendant does not present persuasive evidence that Congress did not intend to reach the conduct of individuals like Defendant. Defendant quotes the language of the statute stating its purpose:

"(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations".

15 U.S.C. § 1679. This purpose applies here. The Court is not persuaded by Defendant's arguments.

The statute itself states that it is designed to provide prospective clients of credit repair organizations with all the information necessary to make a decision regarding these services. In 15 U.S.C. sections 1679, et seq. Congress proscribed what information a credit repair organization is specifically required to give a client. While Plaintiff does not allege that Defendant engaged in deceptive advertising, Congress prohibits other actions relating to the actions of credit repair organizations. These prohibitions of the statute are no less valid and are not clearly beyond what Congress intended. While many of the cases discussing this statute interpret section 1679b(a), which relates generally to the prohibition of credit repair organizations' deceptive, misleading, or fraudulent statements or actions, violations of other provisions of the section are still violations. The statute does not require any such fraudulent activities to serve as a predicate for other violations under the statute.

Thus, the Court finds that Plaintiff has established that Defendant admitted to liability under 15 U.S.C. sections 1679c, 1679d, 1679e(b).

## 2. PLAINTIFF'S UCC CLAIM

 The UCC prohibits "unfair competition" which is defined as "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof.Code § 17200. The Legislature intended this "sweeping language" to include " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 560, 71 Cal.Rptr.2d 731, 950 P.2d 1086 (1998) (quoting *Bank of the West v. Sup.Ct.*, 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)). "When determining whether a practice is 'unlawful,' section 17200 'borrows' violations of other laws, and makes them independently actionable under the [UCL]." *AICCO, Inc. v. Ins. Co.*

*of North Am.,* 90 Cal.App.4th 579, 109 Cal.Rptr.2d 359 (2001) (*citing Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999)). "Virtually any law-federal, state or local-can serve as a predicate" for a UCL claim, "unless the defendant is privileged, immunized by another statute, or the predicate statute expressly bars its enforcement" under the UCL. *Stevens v. Sup.Ct.,* 75 Cal. App.4th 594, 602, 89 Cal.Rptr.2d 370 (1999). Defendant's practices, which violate the CROA, also violate the UCL.

## DISPOSITION

For the reasons stated herein, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment and DENIES Defendant's Motion for Summary Judgment. Because of the remaining factual issues surrounding the prospective class, the Court is unable to address the issue of damages at this time.

IT IS SO ORDERED.