## LANE v. FEDERAL TRADE COMMISSION.

### No. 9845.

Circuit Court of Appeals, Ninth Circuit.
Aug. 20, 1942.

Robert H. Hosick, of Los Angeles, Cal., for petitioner.

W. T. Kelley, Chief Counsel, Joseph J. Smith, Jr., Asst. Chief Counsel, Fletcher G. Cohn, James W. Nichol, and J. B. Truly, Sp. Attys., all of Washington, D. C., for respondent.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Here for review is an order of the Federal Trade Commission "that [petitioner], trading or doing business as Consumers Bureau of Standards or Consumers Bureau, or under any other name, his representatives, agents and employees, directly or through any corporate or other device, in connection with the offering for sale, sale, or distribution in commerce, as 'commerce' is defined in the Federal Trade

Commission Act', 15 U.S.C.A. §§ 41–58,[1] of any book, magazine, periodical, circular letter, or any other printed or written matter which gives or purports to give appraisals or classifications of merchandise, goods, or services, do forthwith cease and desist, directly or by implication, from:

"(1) Representing in any manner, or using any trade or other name which imports or implies, that such publication is compiled, issued, sold, or offered for sale by or under the direction of any bureau, institute, or organization engaged in research work for the benefit of consumers, or devoted to aiding consumers in making wise or economical purchases, or which by means of any scientific or adequate tests of any nature designates the comparative consumer value of any merchandise, goods, or services;

"(2) Representing that any such publication is or will be issued, printed, or distributed at any stated time or times other than those at which it is actually issued, printed, or distributed;

"(3) Representing that [petitioner's] business is operated on a non-profit basis;

"(4) Representing that [petitioner's] business is national in scope, or representing in any manner that such business is greater in size or scope than is the fact;

"(5) Representing that [petitioner] is, or represents, any consumers' research group or movement;

"(6) Representing that [petitioner] has any arrangement with the Mellon Institute of Industrial Research, Massachusetts Institute of Technology, or any similar organizations or institutions, for the submission thereto for determination of any questions concerning the value or comparative value of merchandise, goods, or services;

"(7) Representing that [petitioner] personally is qualified by any special training, education, or experience to determine, or has any employees, staff, equipment, or facilities for determining, by any scientific method or adequate investigation or tests, the value or comparative value of any merchandise, goods, or services;

"(8) Threatening, inferring, or implying to any manufacturer or distributor of mer-

chandise, goods, or services that a refusal to buy copies of or contribute financially to such publication or directly or indirectly to [petitioner], will or may result in unfavorable, disparaging, or derogatory listing of, or reference to, such manufacturer or distributor or his merchandise, goods, or services in or in connection with said publication."

Thirty-eight points are urged by petitioner. Twenty-nine (points 6, 9–34, 36 and 37) are that the Commission erred in its findings. These points have no merit. The findings are supported by evidence and hence are conclusive. Federal Trade Commission Act, § 5(c), 15 U.S.C.A. § 45 (c).

There remain for consideration points 1–5, 7, 8, 35 and 38. Point 1 is that "The Commission had no jurisdiction over this case for the reason that the Consumers Bureau of Standards organization was a non-profit trust." This was not a proceeding against "the Consumers Bureau of Standards organization." It was a proceeding against petitioner. The Commission found: "[Petitioner] is an individual who, under the trade names of Consumers Bureau of Standards and Consumers Bureau, has been, and is, engaged in the business of selling and distributing in commerce between and among the various States of the United States and in the District of Columbia certain publications, purporting to list and grade consumers' merchandise, goods, and services sold and distributed throughout the United States. * * * There was, and is, no such organization as Consumers Bureau of Standards or Consumers Bureau. As hereinabove stated, these are merely trade names under which [petitioner] conducted his said business."

These findings are supported by evidence and hence are conclusive. The Commission did not attempt in this case to exercise jurisdiction over any trust—"non-profit" or otherwise. We therefore have no occasion to decide whether or not "non-profit" trusts are subject to its jurisdiction.

Point 2 is that, "As to acts committed before the Wheeler-Lea Amendment,[2] the Federal Trade Commission has no ju-

[1] Section 4 of the Act, 15 U.S.C.A. § 44, defines "commerce" as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and an-

other, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation."

[2] Meaning, evidently, § 3 of the Wheeler-Lea Act of March 21, 1938, c. 49, 52

risdiction where there is no competition." This proposition has no relevancy here; for petitioner had competitors and used unfair methods of competition in commerce both before and after the so-called Wheeler-Lea Amendment.

Point 3 is that "There is no evidence of unfair or deceptive acts or practices occurring subsequent to March 21, 1938." Actually, the record is replete with such evidence.

■ Point 4 is that "The Commission erred in denying fairness of hearing required by due process of law." Specifically, petitioner claims that the hearing was unfair in that he was not permitted to cross-examine William P. Collis and Ralph B. Sharbrough. Collis and Sharbrough were witnesses both for the Commission and for petitioner. Collis testified as a witness for the Commission on June 14, 1939, October 13, 1939, and March 7, 1940, and as a witness for petitioner on December 4, 1939. Petitioner examined Collis on December 4, 1939, and was given full opportunity to cross-examine him on March 7, 1940, but refused to do so. Sharbrough testified as a witness for the Commission on June 14, 1939, October 13, 1939, and March 6, 1940, and as a witness for petitioner on December 5, 1939. Petitioner examined Sharbrough on December 5, 1939, and cross-examined him on March 6, 1940. The claim that petitioner was denied a fair hearing is baseless and unwarranted.

■ Points 5, 7 and 8 are that the Commission's trial examiner erred in admitting evidence. Point 7 relates to oral testimony, points 5 and 8 to documentary evidence, namely, the Commission's exhibits 2, 6, 8, 9, 16, 19, 21, 22, 24, 25, 31–34, 42 and 43. The testimony and all the exhibits except exhibit 9 were received without objection. Petitioner's objection to exhibit 9 was, "I object on the grounds we are exempt under § 4 of the Act"—meaning, obviously, that petitioner was exempt from the provisions of the Federal Trade Commission Act. There was and is no such exemption. The objection was properly overruled.

Point 35 is that "The order is excessive where it covers matters not included in the findings." Specifically, petitioner complains of that part of the order which requires him to cease and desist from representing that his business is operated on a non-profit basis. Petitioner's brief states that "The Commission did not make any finding as to representations of being non-profit." The statement is untrue. The Commission found that petitioner made the following representation: "Consumers Bureau of Standards is a national non-profit consumers' research and educational organization which investigates, tests and reports on goods and services for the benefit of the ultimate consumer."

■ Since, as the Commission found, "Consumers Bureau of Standards" was merely a name under which petitioner conducted his business, the Commission's finding that petitioner made the above quoted representation was, in effect, a finding that petitioner represented that his business was operated on a non-profit basis.

■ All representations and threats mentioned in the order were found by the Commission to have been made by petitioner, directly or by implication, in the course and conduct of his aforesaid business. The Commission further found that the representations were false and deceptive; that petitioner's competitors were injured by the representations and by the threats; and that the representations and threats constituted unfair methods of competition in commerce and unfair and deceptive acts and practices in commerce. Thus the order is, in all respects, supported by the findings.

Point 38 is that the order is "so drastic in its provisions that it prohibits petitioner from doing any business at all." The order does not prohibit petitioner from doing any lawful business in any lawful manner. It merely requires him to cease and desist from using unfair methods of competition in commerce and unfair and deceptive acts and practices in commerce. Specifically, it requires him to cease and desist from, directly or by implication, making the representations and threats mentioned in the or-

Stat. 111, amending § 5(a) of the Federal Trade Commission Act, 15 U.S.C.A. § 45 (a). Before the amendment, § 5(a) empowered and directed the Commission to prevent persons, partnerships and corporations "from using unfair methods of competition in commerce." 38 Stat. 719.

As amended, § 5(a) empowers and directs the Commission to prevent persons, partnerships and corporations "from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 52 Stat. 111.

der—"in connection with the offering for sale, sale, or distribution in commerce * * * of *any* book, magazine, periodical, circular letter, or *any* other printed or written matter which gives or purports to give appraisals or classifications of merchandise, goods, or services." (Emphasis supplied).

■■ Petitioner contends that the word "any" in the above quoted phrase makes the order too broad. We do not think so. The representations mentioned in the order were false and deceptive when made in connection with the sale and distribution of the publications heretofore sold and distributed by petitioner. The record does not show that petitioner has ever sold or distributed any publication as to which these representations could be truthfully made. We are not required to assume that he will do so hereafter or to modify the order in accordance with that assumption. Century Metalcraft Corp. v. Federal Trade Commission, 7 Cir., 112 F.2d 443, 446; Macher v. Federal Trade Commission, 2 Cir., 126 F.2d 420.

Order affirmed.