STEELCO STAINLESS STEEL, Inc., et al. v. FEDERAL TRADE COMMISSION.

No. 10178.

United States Court of Appeals Seventh Circuit.

Heard Feb. 15, 1951.

Decided March 6, 1951.

694

John A. Nash, Arthur H. Schwab and Earl M. Friesenecker, all of Chicago, Ill., for petitioners.

W. T. Kelley, General Counsel, James W. Cassedy, Associate General Counsel and John W. Carter, Jr., Special Counsel, Federal Trade Commission, all of Washington, D. C., for respondent.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

This is a petition by Steelco Stainless Steel, Inc. and Clyde C. Carr, individually and as an officer of the corporation, to review and set aside a cease and desist order issued by the Federal Trade Commission (respondent) on March 15, 1950. The complaint issued March 9, 1948, charging petitioners with unfair methods of competition and unfair and deceptive acts and practices in commerce in violation of the Federal Trade Commission Act, 15 U.S.C.A. § 45. Petitioners were engaged in the sale and distribution of stainless steel cooking utensils in interstate commerce in competition with others selling various types of cooking utensils. The complaint as well as the findings are voluminous and supply material for an opinion almost without end, if we were looking for an excuse to indulge in such time-consuming activity, but in the view which we take, no useful purpose could be served in so doing. And particularly is this so in light of the disclosure that petitioners by their answer to the complaint and by stipulation entered into at the trial have conceded a major portion of the allegations of the complaint. It follows that findings made in accordance therewith and those portions of the order predicated upon such findings are not open to attack.

More than that, while petitioners in their brief and argument in this court make the general charge that the findings are not supported by substantial evidence, they fail to point out the particular findings under attack, many of which, as already noted,

rest upon conceded facts. It has been held that findings are presumed to be supported by substantial evidence, Federal Trade Commission v. A. McLean & Son, 7 Cir., 84 F.2d 910, 911, certiorari denied 299 U.S. 590, 57 S.Ct. 117, 81 L.Ed. 435, and that a court is not required to search the record for undesignated errors claimed in an omnibus attack upon the findings, North Whittier Heights Citrus Ass'n v. National Labor Relations Board, 9 Cir., 109 F.2d 76, 83, certiorari denied 310 U.S. 632, 60 S.Ct. 1075, 84 L.Ed. 1402.

Notwithstanding what we have said, it is discernible from petitioners' brief that their attack upon the substantiality of the findings may be categorized as follows: (1) that petitioners' salesmen made disparaging statements relative to competitive products, which petitioners in their brief state is the most important and material issue; (2) that petitioner Clyde C. Carr was improperly included in the order in his individual capacity; (3) that the order is based upon conflicting opinion testimony, and (4) that the findings and order are based upon unjustified inferences and unwarranted interpretation of the meaning of representations made and immaterial representations which it is asserted were no more than so-called "puffing" statements.

With the issues thus narrowed, we return to a brief statement of the factual situation pertinent thereto. The complaint alleged that petitioners caused their products, stainless steel cooking utensils, to be sold and offered for sale through sales agents who conducted, under petitioners' direction, demonstrations in the use of the products, exhibiting charts and distributing pamphlets and various other printed matter accompanied by sales talks taken from sales manuals supplied by petitioners, and that by this method, manner and means petitioners disseminated false, misleading and deceptive statements and representations as to the characteristics and nature of the products and the effectiveness and result upon health to be obtained from the use thereof in the cooking and preparation of food; and, as to the vital need of various named organs and tissues of the human body for certain designated materials and vitamins, and the effect thereof on the structure and function of such organs and tissues. The complaint goes into much detail describing the false and misleading representations thus made and sets forth various pamphlets and circulars issued by the petitioners. Because of their length we shall not attempt to set forth these exhibits in detail. It is sufficient to note that they list many and perhaps all of the minerals essential to the functions and structure of the various organs and tissues of the human body, together with the effect which they are designed to have thereon. Typical of the representations thus made is that sulphur purifies and tones the human system and intensifies feeling and emotions; that phosphorus nourishes the brain cells, builds power of thought and stimulates the growth of the hair; that calcium gives vitality, endurance, heals wounds and counteracts acid; that magnesium relaxes the nerves, refreshes the human system, prevents and relieves constipation; that potassium is a liver activator, makes tissues elastic, muscles supple, creates grace, beauty and a good disposition. Contained in one of said exhibits is a representation that Vitamin A affords resistance to disease and is effective in preventing and relieving anemia, pellagra and gallstones; that Vitamin B prevents and relieves nervous disease and paralysis; that Vitamin C imparts strength and endurance and prevents and relieves muscular disease and loss of weight, and so on. In another exhibit is a picturization of the human body in connection with which there appear statements associating various tissues and organs with certain specified minerals and vitamins. That such representations were false is not disputed, but it is claimed they were not deceptive.

The complaint alleged that for the purpose of inducing the purchase of their products petitioners made false and disparaging statements and representations of cooking utensils sold by their competitors, such representations and statements being to the effect that consumption of food prepared or kept in aluminum utensils, if eaten, would cause cancer, stomach trouble, anemia, blood poisoning and various other ailments, afflictions and diseases detrimental to the

health of the user, that the preparation of food in such utensils would cause formation of poisons, and that by reason of such false and disparaging statements the public was induced to purchase large quantities of petitioners' products and, as a result, trade had been unlawfully diverted to petitioners from their competitors.

On the issue of the disparagement of competitive products, the Commission found, " * * * over a substantial number of years, over a representative area, and in a substantial number of instances a number of respondents' salesmen, in the course of their demonstration and selling talks, represented to prospective purchasers that cooking food in aluminum ware would cause, in the consumer of the food, cancer, ulcers, bad health, decayed teeth, indigestion, and poisoning, bacterial and metallic; that minerals and vitamins essential to health were lost by cooking therein; that their use was bad for children and pregnant women; that aluminum ware retained an odor and destroyed the color of food," and that "The effect of these representations was to frighten some of those to whom they were made into discarding their currently used cooking utensils and buying respondents' products and persuading others to do likewise." It was found that these representations were false and deceptive in that cooking in aluminum utensils did not have the effect, produce the results or cause the diseases ascribed to them. And the Commission found, "As a result of the disparagement of competitors' products, trade has been unfairly diverted to the respondents from their competitors, whereby substantial injury has been, and is being done by respondents to their competitors in commerce among the States of the United States and the District of Columbia."

Petitioners attack this finding relative to disparagement mainly upon two grounds: (1) that the testimony is so lacking in probative value as not to constitute substantial evidence, and (2) in any event, petitioners' salesmen were acting in the capacity of independent contractors rather than agents and that petitioners are not responsible for their statements. The Commission offered some twenty-four house-

wives as witnesses on this disparagement issue, and in varying degree their testimony amply supports the finding. It is true, as argued by petitioners and as pointed out by the Trial Examiner, that little, if any, weight should be attached to the testimony of some of such witnesses for various reasons. However, determination of the credibility and weight to be attached to their testimony has been lodged with the Commission as the trier of the facts. More than that, their testimony is quite convincing that petitioners' salesmen made the representations found by the Commission. We are not impressed with the contention that the testimony of such witnesses is not substantial merely because it relates to a comparatively few of petitioners' salesmen. Especially is this so when such testimony is evaluated in connection with the false, misleading and deceptive pamphlets and literature which admittedly were prepared and placed in the hands of the salesmen by petitioners. It may be true that there is nothing in such pamphlets or literature directly suggestive of disparagement of competitive products, but it certainly was suggestive in that petitioners' salesmen were authorized to sell petitioners' products on other than a truthful and honest basis. It is hardly conceivable that such pamphlets and literature could have been supplied for any other purpose, and it is a weak argument on the part of petitioners that its salesmen went further in their unfair and deceptive tactics than was suggested by petitioners themselves. And it is of little benefit to petitioners that they instructed their salesmen to sell their products on the merits without disparagement of competitive products.

The Commission found, "In the sale of their products, respondents enter into contracts, called franchises, with salesmen, designated as dealers, and furnish the latter with sales manuals, instruction books, advertising matter, pamphlets, leaflets, charts, circulars, order books, chattel mortgages for deferred payment sales, and sample outfits of respondents' products. Such agents have authority to receive the sales price of respondents' products, to receive deposits on deferred payment sales, to evaluate and allow trade-in allowances on used.

cooking utensils and to conduct demonstrations of cooking with respondents' utensils in the homes of prospects, giving lectures and sales talks in the course thereof. Such salesmen, in most instances, devote their full time to respondents and do not sell other merchandise. These salesmen do not purchase respondents' products for resale to the consumer but sell them on behalf of respondents. Such salesmen are agents or employees of respondents and are not independent contractors or independent dealers. Respondents are fully responsible for such salesmen's acts and statements made in connection with the sale or offering for sale of their products and germane thereto."

◼ No direct attack is made upon this finding, but nonetheless cases are cited in support of the theory that the salesmen were independent contractors or, at any rate, sustain a relationship with petitioners by which the latter are not responsible for their activities. The authorities cited are of no aid to petitioners' contention. We think it is hardly open to question but that the salesmen were acting in the capacity of employees and agents of petitioners and that petitioners are bound by and responsible for their activities.

The Commission found, "Respondent Clyde C. Carr is president of, and the majority stockholder in, the corporate respondent, and has been such since he organized the corporation. The only other officers and stockholders are his son-in-law and daughter, who, together with him, constitute the board of directors. By virtue of stock ownership, officership, and active direction, the policies, activities, and practices of the corporate respondent are his."

◼ Notwithstanding this undisputed finding, it is argued that petitioner Carr in his individual capacity should not be included in the order under attack. The record unmistakably discloses that the management, direction and activities of the corporation were those of Carr. A corporation can act or speak only through its authorized officers and agents. In the instant case it was Carr alone, and it is not discernible either how or why his activities

as a person should be separated or distinguished from those of the corporation. In our view, he as an individual occupies precisely the same position as does the corporation. To think contrary means that an individual as the sole manager of and responsible for the activities of a corporation can escape liability on the flimsy pretext that he was merely acting on behalf of the corporation and not as an individual. We think he is a proper party to the cease and desist order and approve the Commission's action in this respect. Cf. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 120, 58 S.Ct. 113, 82 L.Ed. 141; Sebrone Co. v. Federal Trade Commission, 7 Cir., 135 F.2d 676, 678.

◼ Petitioners contend that conflicting opinion testimony is insufficient to support adverse findings against them. We know of no rule which requires the rejection of proper opinion testimony merely because it is in conflict with other testimony of the same character. The weight to be attached to such testimony, the same as any other kind of testimony, is for the trier of the facts and we know of no reason against its utilization as the basis for a finding. More than that, petitioners fail to specify which of the findings they would have us reject because based upon such testimony. Likewise without merit is the argument that the Commission indulged in unjustified inferences and unwarranted interpretations which it has ascribed to petitioners' activities, particularly the statements contained in the pamphlets and literature which were applied to their salesmen. In fact, we think that the inferences thus drawn were not only reasonable but inescapable. Neither are we impressed with the suggestion that representations relied upon can be excused on the basis that they are only "puffing", as that expression is sometimes used. It seems plain that the representations were made in order to induce the purchase of petitioners' products, and those contained in printed matter as well as the false statements by the salesmen were made with that end in view. Statements made for the purpose of deceiving prospective purchasers and particularly those designed to consummate the sale of products by

fright cannot properly be characterized as mere "puffing."

An examination of the record is convincing that other questions raised by petitioners are without merit and need not be discussed. No reason is discernible why the order complained of should not be enforced.

The petition to review is dismissed, and a decree will be entered affirming the Commission's order to cease and desist and commanding obeyance and compliance by petitioners.