## CONSUMER SALES CORP. v. FEDERAL TRADE COMMISSION.

### No. 175, Docket 22123.

United States Court of Appeals
Second Circuit.

July 15, 1952.

Murray M. Segal, New York City, for petitioners.

W. T. Kelley, General Counsel, James W. Cassedy, Asst. General Counsel, and James E. Corkey, Sp. Atty., Washington, D. C., for respondent.

Before SWAN, Chief Judge, and CHASE and FRANK, Circuit Judges.

SWAN, Chief Judge.

The proceedings culminating in the order of which the petitioners seek review were

commenced on July 13, 1949 by the issuance of a complaint by the Federal Trade Commission alleging the commission by Consumer Sales Corporation and Julius J. Blumenfeld and Myron J. Colin individually and as officers of said Corporation of unfair and deceptive acts and practices in commerce in violation of section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45(a). Testimony and other evidence was taken before a trial examiner, and, on final hearing, the Commission made its findings of facts and concluded that the acts and practices so found were injurious to the public and violative of the Act. The material parts of the Commission's order, issued June 27, 1951, are set forth in the margin.[1]

The facts as reflected in the findings may be summarized as follows: Consumer Sales Corporation was engaged in the sale of aluminum cookware, dinnerware, silver plate and glassware through the medium of door-to-door salesmen. Certain of these salesmen have falsely represented to prospective customers that they were making a survey for prominent soap manufacturers who desired to obtain from housewives soap box tops, and if the prospective customer would collect and send to the corporate petitioner a certain number of box tops from said soap manufacturers' products, they were authorized to offer petitioners' merchandise at a special low price which was twenty to fifty dollars less than the regular price. In fact, the prices represented as constituting a special offer were the same as those at which the merchandise was customarily and regularly sold by the corporate petitioner. The Corporation furnished such salesmen order blanks entitled "Special Offer," and a certificate of authority to solicit and accept orders and collect deposits. Upon delivery of the merchandise to a purchaser the petitioners' truck-driver obtained the purchaser's signature to a note for the balance due and left with the purchaser an addressed envelope in which the soap box tops were to be mailed to the corporate petitioner. The individual petitioners were respectively president and secretary-treasurer of the Corporation and owned all its stock.[2] They directed its activities and formulated and controlled its policies.

The petitioners contend that they cannot be held responsible for misrepresentations by the salesmen, who were independent contractors; that the Commission's order is not in the public interest; that the individual petitioners, and particularly Blumenfeld, should not have been included in it; and that in any event it is too broad. These points will be considered seriatim.

■ The petitioners argue that they had no knowledge of the salesmen's false state-

---

1. "It is ordered that the respondent, Consumer Sales Corporation, a corporation, and its officers, agents, representatives, and employees, and the individual respondents, Julius J. Blumenfeld and Myron J. Collin, and their respective agents, representatives, and employees, directly or *through any corporate or other device*, in connection with the offering for sale, sale or distribution of aluminum cookware, dinnerware, silverware, *or other merchandise*, in commerce, as 'commerce' is defined in the Federal Trade Commission Act, do forthwith cease and desist from representing, directly or by implication:

 "(1) That the respondents or any of them are connected with or represent in any manner any soap manufacturer *or any other company or organization* unless such is the fact.

 "(2) That the respondents or any of them are making or conducting a survey.

 "(3) That the purchasers of the said merchandise are being given a reduced price for such merchandise *or any other valuable consideration* as a premium or reward for their collection of box tops, *co-operation in furnishing information or participation in any other similar project or activity.*

 "(4) That said merchandise is being sold at a special price when the price at which it is sold is the usual and customary price at which respondents sell such merchandise in the ordinary course of their business."

 The order uses no italics. Italics have been added to indicate the terms of which the petitioners complain, as discussed in the final point of the opinion.

2. Petitioner Blumenfeld resigned his office and disposed of his stock on March 21, 1950. This was eight months after the complaint was filed and about one month after hearings before the trial examiner were closed.

ments and neither authorized nor participated in their making. The Commission, however, found that "by furnishing the salesmen with order forms falsely representing that they were making a special offer, by permitting the salesmen to request purchasers to collect box tops and by furnishing self-addressed envelopes for the handling of the box tops, respondents actively encouraged and participated in making the said false representations." The petitioners' argument that having box tops sent to them was merely an innocuous scheme to preserve contact with a customer in order to be able to approach him again in the hope of making another sale is wholly unconvincing. Obviously the petitioners intended the salesmen to give some reason for asking the purchaser to collect soap box tops, and it would necessarily have to be a fictitious reason. The Commission found that "The evidence shows that the above-described sales approach was the usual and typical sales method, of salesmen selling respondents' products." It is also obvious that the petitioners knew that the "Special Offer" order blanks supplied to the salesmen would deceive customers since the prices stated thereon were the customary and regular prices for the merchandise offered. Since the finding that the petitioners "actively encouraged and participated in making" the false representations is amply supported by the evidence, it is unnecessary to consider whether or not the salesmen's relation to the petitioners was that of independent contractors.[3]

 The contention is made that there is no evidence to support the Commission's finding that a substantial portion of the public was induced to purchase petitioners' merchandise on the strength of these false representations, and therefore the Commission's action was not in the public interest.

The argument is based on the *de minimus* concept: only fourteen housewives testified before the Commission although thousands of sales were made. We are not persuaded by this reasoning, however. There is no indication that these were the only housewives to whom false representations were made. On the contrary, the evidence shows that all salesmen carried order blanks marked "Special Offer," and the brown envelopes were distributed to all buyers indicating that these fourteen witnesses were but a few of the many deceived.[4] Substantial amounts of merchandise having been sold by false and misleading representations, the interest of the public in the proceeding was well established.[5] It is also said that the practice of solicitation of soap box tops was discontinued prior to the issuance of the complaint, therefore the order was not in the public interest. Aside from one statement in the answer, however, there is no proof of abandonment and certain statements at the hearing point to an opposite conclusion. But even if the practice had been discontinued, that did not deprive the Commission of power to enter such order as it determined necessary to prevent their revival, absent a showing of abuse of discretion.[6] No abuse can be shown here. The soap box top approach was but a part of the whole scheme to delude purchasers into believing they were obtaining something for less than its real value, and there is no indication that petitioners have abandoned their misleading offer to sell goods at a special low price.

 Little need be said in answer to the contention that the individual petitioners should not have been included in the order. They had organized the corporate petitioner approximately two years before this proceeding was commenced. They were its officers, they owned all its capi-

---

3. Parke, Austin & Lipscomb, Inc. v. Federal Trade Com., 2 Cir., 142 F.2d 437, 440.

4. See Steelco Stainless Steel, Inc. v. Federal Trade Commission, 7 Cir., 187 F.2d 693, 696.

5. See e. g., Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 493,

42 S.Ct. 384, 66 L.Ed. 729; Parke, Austin & Lipscomb, Inc. v. Federal Trade Commission, 2 Cir., 142 F.2d 437, 441; International Art Co. v. Federal Trade Commission, 7 Cir., 109 F.2d 393, 397, certiorari denied 310 U.S. 632, 60 S.Ct. 1078, 84 L.Ed. 1402.

6. Hillman Periodicals, Inc. v. Federal Trade Commission, 2 Cir., 174 F.2d 122.

tal stock and they and their wives constituted its board of directors. It was admitted in the answer to the complaint, as well as in their testimony, that they directed and guided the corporation in matters of policy. Under these circumstances they cannot escape individual responsibility on the "flimsy pretext" that they were acting on behalf of the corporation and not as individuals.[7] The fact that Blumenfeld resigned as an officer and director and disposed of his stock before the order was entered does not make erroneous his inclusion in it. He was included not because he was still an officer or stockholder of the offending corporation but because he himself had participated in the use of unfair and deceptive acts or practices in commerce. Consumer Sales Corporation is not the only vehicle through which such acts may be accomplished in the future. We think the Commission was warranted in not dismissing the complaint against him.

Lastly petitioners argue that the order employs unduly broad and indefinite language which proscribes conduct other than that which forms the basis of the complaint. The order with the alleged objectionable portions in italics, is printed in the margin.[8] It will be noted that in large part the language objected to seeks to prevent petitioners from continuing their illegal sales methods in a slightly different manner. So much of the order as seeks to accomplish this end is proper. The Commission's power is not limited to proscribing only the particular scheme used in the past. It may also prohibit variations on the basic theme.[9] Thus it was proper to prevent petitioners from using another legal entity to accomplish their illegal purpose, to prohibit them from selling different merchandise while using the same approach, and to enjoin representations that they were connected with large manufacturers who did not make soap or that the buyer was receiving a valuable consideration other than a reduced price for participating in a similar project or activity. Our power to modify an order such as this, once an illegal trade practice has been found, is severely circumscribed,[10] but even if it were not we could find nothing improper about the Commission's efforts to prevent this scheme from reappearing in a slightly altered garb. Petitioners also object to paragraph (4), asserting that the words "special price" were not mentioned in the complaint. There is no merit in the argument; the complaint adequately alleged petitioners were offering their wares at what was said to be less than their real value when such was not the fact. Nor do we think the words "unless such is the fact" should be added to paragraph (2). Petitioners are engaged in the business of selling, not conducting surveys, and there is no evidence that they have ever conducted a legitimate survey in the past or intend to in the future. If and when they decide to do so, either through their own organization or in conjunction with another company or organization as is permitted in paragraph (1), they may apply to the Commission for a modification of the order.[11] An order forbidding the making of representations which are deceptive need not be qualified by a provision

7. Steelco Stainless Steel, Inc. v. Federal Trade Commission, 7 Cir., 187 F.2d 693, 697. Cf. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 119–120, 58 S.Ct. 113, 82 L.Ed. 141; Sebrone Co. v. Federal Trade Commission, 7 Cir., 135 F.2d 676, 678.

8. See note 1, supra.

9. N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 436–437, 61 S.Ct. 693, 85 L.Ed. 930; Local 167 v. United States, 291 U.S. 293, 299, 54 S.Ct. 396, 78 L.Ed. 804; Hershey Chocolate Co. v. Federal Trade Commission, 3 Cir., 121 F.2d 968,

971–972; E. B. Muller & Co. v. Federal Trade Commission, 6 Cir., 142 F.2d 511, 520.

10. Herzfeld v. Federal Trade Commission, 2 Cir., 140 F.2d 207, 209; Hillman Periodicals, Inc. v. Federal Trade Commission, 2 Cir., 174 F.2d 122, 123; Gold Tone Studios, Inc. v. Federal Trade Commission, 2 Cir., 183 F.2d 257, 259; Independent Directory Corp. v. Federal Trade Commission, 2 Cir., 188 F.2d 468, 470.

11. P. Lorillard Co. v. Federal Trade Commission, 4 Cir., 186 F.2d 52, 59.

permitting them if in the future they can be truthfully made.[12]

The petition to review is dismissed and an order of enforcement may be entered.

[12]. Macher v. Federal Trade Commission, 2 Cir., 126 F.2d 420; Century Metalcraft Corp. v. Federal Trade Commission, 7 Cir., 112 F.2d 443, 446–447; Lane v. Federal Trade Commission, 9 Cir., 130 F.2d 48, 52.