[Cite as *Bumpus v. Ward*, 2012-Ohio-4674.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| MARTHA BUMPUS | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-5 |
| LLOYD WARD, P.C., ET AL | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:  Civil appeal from the Knox County Court of Common Pleas, Case No. 11OT05-260

JUDGMENT:  Reversed and Remanded

DATE OF JUDGMENT ENTRY:  October 9, 2012

APPEARANCES:

For Plaintiff-Appellant

JEREMIAH HECK
KATHERINE L. KEENAN
580 E. Rich Street
Columbus, OH 43215

For Defendant-Appellee

FREDERICK STRATMANN
ADAMS BABNER, LLC
5003 Horizons Drive, Ste. 200
Columbus, OH 43215

*Gwin, J.,*

**{¶1}** Appellant Martha Bumpus ["Bumpus"] appeals the January 23, 2012 Judgment Entry of the Knox County Court of Common Pleas dismissing her case against appellees Lloyd Ward P.C, dba Lloyd Ward & Associates, Lloyd Ward Group, LLC, Lloyd Ward, ABD Debt Relief Ltd., Co., Lloyd Renger and Kevin Devoto [hereinafter collectively "Ward"].

### *Facts and Procedural History*

**{¶2}** Bumpus alleges that Ward is a "for profit" debt relief or credit repair company that promises consumers resolution of their credit card debt at a substantial discount. Unfortunately, some such companies predatory fee practices can exacerbate the consumer's financial problems.

**{¶3}** Ohio protects its citizens from predatory and potentially harmful debt relief practices by the Ohio Debt Adjustment Act, R.C. Chapter 4710 ["DACA"], the Ohio Credit Services Organization Act, R.C. Chapter 4712 ["CSOA"], and the Ohio Consumer Sales Practices Act, R.C. Chapter 1345 ["CSPA"].

**{¶4}** Bumpus filed a complaint on May 6, 2011 alleging in part that Ward has attempted to circumvent the consumer protection laws by advancing a pretense that the debt relief services are being performed by an attorney, thereby evading the consumer protection laws applicable to debt settlement and credit repair companies. Bumpus alleged in her complaint that an attorney did not in fact perform the services.

**{¶5}** In response on June 23, 2011, Ward filed a "Motion to Dismiss or in the Alternative to Transfer Venue." Ward argued that Bumpus' complaint failed to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). Ward further argued

that if the court did not dismiss the complaint pursuant to Civ.R. 12(B)(6), the court, pursuant to Civ.R. 3 and 12(B)(3), should find Knox County, Ohio to be an inconvenient forum. Ward asked the trial court to stay the proceedings to allow Bumpus to cure this defect by filing the suit in the State of Texas. Ward attached four exhibits to its motion.

{¶6} On January 23, 2012, the trial court filed its Judgment Entry stating,

The Court, after a review of the pleadings, the case file, and the applicable law finds and IT IS ORDERED that Defendants' Motion is well taken and is herby sustained.

### Assignments of Error

{¶7} Bumpus raises two assignments of error,

{¶8} "I. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER VENUE.

{¶9} "II. THE TRIAL COURT ERRED IN DECLARING KNOX COUNTY FORUM NON-CONVENIENCE AND FINDING THAT VENUE SHOULD BE TRANSFERRED TO DALLAS COUNTY, TEXAS."

### Analysis

{¶10} At the outset we recognize, as do the parties, that the trial court's January 23, 2012 does not specifically state whether the trial court dismissed the case for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6) or for forum non-conveniens pursuant to Civ.R. 3 and 12(B)(3).

I.

{¶11} In her first assignment of error, Bumpus argues that the trial court erred in dismissing her complaint for failure to state a claim on which relief can be granted.

{¶12} When granting a motion to dismiss under Civ.R. 12(B)(6), "it must appear beyond doubt that the plaintiff can prove no set of facts entitling [plaintiff] to relief." *Vail v. Plain Dealer Publishing Co.,* 72 Ohio St.3d 279, 1995-Ohio-187, 649 N.E.2d 182. (Internal citation omitted.) The claims set forth in the complaint must be plausible, rather than conceivable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While a complaint attacked by a Civ.R. 12(B)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds for her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* The court looks not at whether the plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

{¶13} "All that the civil rules require is a short, plain statement of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it is based." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 L.Ed.2d 80(1957). See also Civ.R. 8(A)(1). When filing a claim pursuant to Civ.R. 8(A), "[a] party is not required to 'plead the legal theory of recovery'"; furthermore, "a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief." *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526, 639 N.E.2d 771(1994). Indeed, "that each element of [a] cause of action was not set forth in the complaint with crystalline specificity" does not render it fatally defective and subject to dismissal. *Border City S. & L. Assn. v. Moan*, 15 Ohio St.3d 65, 66, 472

N.E.2d 350(1984). However, "'the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Fancher v. Fancher*, 8 Ohio App.3d 79, 83, 455 N.E.2d 1344(1st Dist. 1982), quoting 5 Wright & Miller, Federal Practice & Procedure: Civil at 120–123, Section 1216 (1969).

{¶14} Civ.R. 12(B) states:

When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. Provided however, that the court shall consider only such matters outside the pleadings as are specifically enumerated in Rule 56. All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

{¶15} "It is the court's responsibility either to disregard extraneous material or to convert a motion to dismiss into a motion for summary judgment when additional materials are submitted." *Keller v. Columbus,* 100 Ohio St.3d 192, 2003–Ohio–5599, 797 N.E.2d 964, ¶ 18. Moreover, "courts cannot rely on evidence or allegations outside the complaint to determine a Civ.R. 12(B)(6) motion." *State ex rel. Fuqua v. Alexander,* 79 Ohio St. 3d 206, 207, 680 N.E.2d 985. It is error to do so. *Id.* Where a trial court chooses to consider materials outside the pleadings, the court must convert the motion

to dismiss into a motion for summary judgment, notify all parties and give them a reasonable opportunity to present all materials made pertinent to such a motion by Rule 56. Civ.R. 12(B); *State ex rel. The v. Cos. v. Marshall,* 81 Ohio St.3d 467, 470, 692 N.E.2d 198 (1998).

**{¶16}** An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In reviewing whether a motion to dismiss should be granted, we accept as true all factual allegations in the complaint. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753(1988).

*A. Ohio Consumer Sales Practices Act and Debt Adjustment Companies Act.*

**{¶17}** In her first cause of action, Bumpus alleged that Ward violated the CSPA and the DACA.

**{¶18}** Accepting the allegations of the complaint as true, the Court finds that Bumpus has adequately pled "a short and plain statement of the claim" that "give[s] the defendant fair notice" of the claim and plaintiff's grounds for relief. *Twombly,* 550 U.S. at 554-555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (quoting Fed.R.Civ.P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, Bumpus tracks the language of the CSPA's definition of "consumer" "supplier"; the DACA definition of "engaging in debt adjustment activities" and identifies the conduct, which allegedly brings Ward within each statute. (*See* Compl. ¶¶ 24-30; 53.) Such allegations satisfy the liberal notice pleading requirements of Civ.R. 8(a) and preclude dismissal pursuant to Civ.R. 12(B)(6).

*B. Credit Services Organization Act.*

**{¶19}** In Count 2 of her complaint, Bumpus alleged Ward violated the CSOA. Thus, Bumpus must set forth sufficient facts demonstrating that she is a "buyer" and Ward qualifies as a "credit services organization" under the statutory definition. *Snook v. Ford Motor Co.*, 142 Ohio App.3d 212, 216, 755 N.E.2d 380 (2nd Dist. 2001).

**{¶20}** R.C. 4712.01(A) defines "buyer" as

(A) "Buyer" means an individual who is solicited to purchase or who purchases the services of a credit services organization for purposes other than obtaining a business loan as described in division (B)(6) of section 1343.01 of the Revised Code.

**{¶21}** The act further provides what is and what is not a "credit services organization,"

(C)(1) "Credit services organization" means any person that, in return for the payment of money or other valuable consideration readily convertible into money for the following services, sells, provides, or performs, or represents that the person can or will sell, provide, or perform, one or more of the following services:

(a) Improving a buyer's credit record, history, or rating;

(b) Obtaining an extension of credit by others for a buyer;

(c) Providing advice or assistance to a buyer in connection with division (C)(1)(a) or (b) of this section;

(d) Removing adverse credit information that is accurate and not obsolete from the buyer's credit record, history, or rating;

(e) Altering the buyer's identification to prevent the display of the buyer's credit record, history, or rating.

(2) "Credit services organization" does not include any of the following:

(a) A person that makes or collects loans, to the extent these activities are subject to licensure or registration by this state;

(b) A mortgage broker, as defined in section 1322.01 of the Revised Code, that holds a valid certificate of registration under sections 1322.01 to 1322.12 of the Revised Code;

(c) A lender approved by the United States secretary of housing and urban development for participation in a mortgage insurance program under the "National Housing Act," 48 Stat. 1246 (1934), 12 U.S.C.A. 1701, as amended;

(d) A bank, savings bank, or savings and loan association, or a subsidiary or an affiliate of a bank, savings bank, or savings and loan association. For purposes of division (C)(2)(d) of this section, "affiliate" has the same meaning as in division (A) of section 1101.01 of the Revised Code and "bank," as used in division (A) of section 1101.01 of the Revised Code, is deemed to include a savings bank or savings and loan association.

(e) A credit union organized and qualified under Chapter 1733. of the Revised Code or the "Federal Credit Union Act," 84 Stat. 994 (1970), 12 U.S.C.A. 1751, as amended;

(f) A budget and debt counseling service, as defined in division (D) of section 2716.03 of the Revised Code, provided that the service is a nonprofit organization exempt from taxation under section 501(c)(3) of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C.A. 501, as amended, and that the service is in compliance with Chapter 4710. of the Revised Code;

(g) A consumer reporting agency that is in substantial compliance with the "Fair Credit Reporting Act," 84 Stat. 1128, 15 U.S.C.A. 1681a, as amended.

(h) A mortgage banker;

(i) Any political subdivision, or any governmental or other public entity, corporation, or agency, in or of the United States or any state of the United States;

(j) A college or university, or controlled entity of a college or university, as defined in section 1713.05 of the Revised Code;

(k) A motor vehicle dealer licensed pursuant to Chapter 4517. of the Revised Code acting within the scope and authority of that license or a motor vehicle auction owner licensed pursuant to Chapters 4517. and 4707. of the Revised Code acting within the scope and authority of that license.

**{¶22}** Accepting the allegations of the complaint as true, this Court finds that Bumpus has adequately pled "a short and plain statement of the claim" that "give[s] the defendant fair notice" of the claim and plaintiff's grounds for relief. *Twombly,* 550 U.S. at

554-555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (quoting Fed.R.Civ.P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, Bumpus tracks the language of the CSOA's definition of "buyer" and "credit services organization" and identifies the conduct that allegedly brings Ward within the statute. (*See* Compl. ¶¶ 7; 60-63.) Such allegations satisfy the liberal notice pleading requirements of Civ.R. 8(a) and preclude dismissal pursuant to Civ.R. 12(B)(6). Ward's argument about what its business actually involves more appropriately belongs in a motion for summary judgment.

*C. Credit Repair Organizations Act.*

**{¶23}** Bumpus' third cause of action alleged that Ward violated the CROA. The CROA is intended,

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. 1679(b). To achieve these ends, the CROA regulates the activities of "credit repair organizations," which are defined to include,

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or

(ii) providing advice or assistance to any consumer with regard to any

activity or service described in clause (i).

15 U.S.C.  1679a (3)(A).

**{¶24}** To establish that Ward operated as a credit repair organization within the meaning of the CROA, it must be shown that they "(1) used any instrumentality of interstate commerce, or the mails, to (2) sell, provide, or perform (or represent that they could do so) (3) in return for valuable consideration (4) services or advice about services (5) for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating." *Hillis v. Equifax Consumer Servs., Inc.,* 237 F.R.D. 491, 511 (N.D.Ga.2006) (citing 15 U.S.C. 1679a(3)).

**{¶25}** Further,  the CROA prohibits a credit repair organization from charging or receiving "any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C.  1679b(b).

**{¶26}** The CROA requires a credit repair organization to provide prescribed disclosures to consumers. Before executing a contract or agreement with a consumer, a credit repair organization must provide the consumer a separate written statement of "Consumer Credit File Rights Under State and Federal Law" in a statutorily prescribed form. 15 U.S.C.  1679c (a), (b).

**{¶27}** The CROA also prohibits a credit repair organization from providing any services to a consumer until (1) the consumer has signed a written and dated contract for the purchase of such service and (2) three business days have passed since the date the contract was signed. 15 U.S.C. 1679d (a), (b). The contract must contain "a

conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract," stating that the consumer may cancel the contract without penalty or obligation at any time before midnight of the third business day after the date on which the consumer signs the contract. 15 U.S.C. 1679d (b)(4).

{¶28} The CROA also prohibits any person from making or using "any untrue or misleading representation of the services of the credit repair organization." 15 U.S.C. 1679b (a).

{¶29} Accepting the allegations of the complaint as true, the Court finds that Bumpus has adequately pled "a short and plain statement of the claim" that "give[s] the defendant fair notice" of the claim and plaintiff's grounds for relief. *Twombly,* 550 U.S. at 554-555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (quoting Fed.R.Civ.P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, Bumpus tracks the language of the CROA's definition of "consumer" and "credit repair organization"; and identifies the conduct that allegedly brings Ward within the statute. (*See* Compl. ¶¶ 25-30; 67-68.) Such allegations satisfy the liberal notice pleading requirements of Civ.R. 8(a) and preclude dismissal pursuant to Civ.R. 12(B)(6). Ward's argument about what its business actually involves more appropriately belongs in a motion for summary judgment.

*D. Fraud.*

{¶30} In her fourth cause of action, Bumpus alleged fraud, as well as fraud in the inducement.

{¶31} Fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, omission of a fact, (2) which is material to the

transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 462 N.E.2d 407(1984). In all averments of fraud, the circumstances constituting fraud must be stated with particularity. Civ.R. 9(B).

"There are usually three reasons cited for the requirement of particularity. First, particularity is required to protect defendants from the potential harm to their reputations which may attend general accusations of acts involving moral turpitude. Second, particularity ensures that the obligations are concrete and specific so as to provide defendants notice of what conduct is being challenged. Finally, the particularity requirement inhibits the filing of complaints as a pretext for discovery of unknown wrongs." *Korodi v. Minot* (1987), 40 Ohio App.3d 1, 4, 531 N.E.2d 318. Typically, the requirement of particularity includes "the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud."

*Baker v. Conlan* (1990), 66 Ohio App. 3d 454, 458, 585 N.E. 2d 543."

*Carter-Jones Lumber Co. v. Denune*, 132 Ohio App.3d 430, 433, 725 N.E.2d 330(10th Dist. 1999).

**{¶32}** A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. "The fraud relates not to the

nature or purport of the [contract], but to the facts inducing its execution * * *." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 14, 552 N.E.2d 207(1990). In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment. *Beer v. Griffith*, 61 Ohio St.2d 119, 123, 399 N.E.2d 1227(1980); *ABM Farms v. Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574(1998).

**{¶33}** Construing the pleadings in the light most favorable to Bumpus, it is apparent that these requirements are met by the allegations in the complaint.

**{¶34}** Bumpus alleged that she was mislead into believing that an attorney would perform the services promised when in fact "non-attorneys" were performing the legal services. Compl. ¶¶11-15. Granting Bumpus the benefit of all favorable inferences, it is possible that proof of such facts at trial could establish Ward's liability. Furthermore, while the remaining allegations in Bumpus' complaint may or may not prove to be relevant in determining whether Ward's conduct amounts to a fraudulent or deceptive business practice, that inquiry involves questions of fact that are not properly addressed on a motion to dismiss. Ward's argument about what its business actually involves more appropriately belongs in a motion for summary judgment.

*E. Piercing the Corporate Veil.*

**{¶35}** Bumpus' fifth and final cause of action seeks to hold the individual principals liable.

**{¶36}** Piercing the corporate veil operates an exception to the general rule that shareholders are not personally liable for the debts of a corporation. *See Dole Food Co.*

*v. Patrickson,* 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003). Courts in Ohio apply a three-prong test for determining whether to pierce the corporate veil. *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.,* 67 Ohio St.3d 274, 289, 617 N.E.2d 1075 (1993). The Ohio Supreme Court in *Dombroski v. Wellpoint, Inc.,* 119 Ohio St.3d 506, 513, 895 N.E.2d 538 (2008) held that "to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." 119 Ohio St.3d 506, 895 N.E.2d 538.

{¶37} In a somewhat analogous situation, courts have employed a slightly different approach in construing the Federal Trade Commission Act ("FTCA"), 15 U.S.C. 41 *et seq.* The FTC is charged with enforcement of Section 5(a) of the FTC Act, 15 U.S.C. 45(a), which prohibits deceptive acts and practices in or affecting commerce. Pursuant to Section 410(a) of the Credit Repair Organizations Act (the "CROA"), 15 U.S.C. 1679h (a), the FTC also has the authority to enforce provisions of the CROA relating to credit repair organizations. Section 410(b) of the CROA, 15 U.S.C. 1679h (b), grants the FTC authority to enforce the CROA in the same manner as it enforces the FTC Act. *See, FTC v. RCA Credit Services, LLC,* 727 F.Supp.2d 1320, 1324-1325(MD Fla. 2010).

{¶38} An individual may be held liable under the FTCA for corporate practices if the FTC first can prove the corporate practices were misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and that consumer injury resulted. *FTC v. Kitco of Nevada, Inc.,* 612 F.Supp. 1282 (D.Minn.1985). Once

corporate liability is established, the FTC must show that the individual defendants participated directly in the practices or acts or had authority to control them. *Kitco,* 612 F.Supp. at 1292. Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer. *Kitco,* 612 F.Supp. at 1292; *see e.g., Consumer Sales Corp. v. FTC,* 198 F.2d 404, 408 (2d Cir.1952), *cert. denied,* 344 U.S. 912, 73 S.Ct. 335, 97 L.Ed. 703 (1953); *FTC v. World Media Brokers,* 415 F.3d 758, 764 (7th Cir.2005).

**{¶39}** In the case at bar, accepting the allegations of the complaint as true, this Court finds that Bumpus has adequately pled "a short and plain statement of the claim" that "give[s] the defendant fair notice" of the claim and plaintiff's grounds for relief. *Twombly,* 550 U.S. at 554-555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (quoting Fed.R.Civ.P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, Bumpus has alleged that the named individuals had complete control over the individual entities, which acted as each individuals "alter ego." Bumpus further set forth sufficient facts to allege that the named individuals controlled the entities in an egregious manner so as to commit fraud, violate the DACA, the CSOA, the CROA and the CSPA. Such allegations satisfy the liberal notice pleading requirements of Civ.R. 8(a) and preclude dismissal pursuant to Civ.R. 12(B)(6).

**{¶40}** For the foregoing reasons, Bumpus' first assignment of error is sustained in its entirety.

II.

{¶41} In her second assignment of error, Bumpus argues that the trial court erred in granting Ward's Motion to Dismiss or in the Alternative Transfer Venue. In the trial court Ward argued that the Court of Common Pleas Knox County, Ohio was an inconvenient forum to address Bumpus' Complaint and that the Courts in the State of Texas were a more appropriate forum and proper venue for this case.

{¶42} A review of the trial court's January 23, 2012 Judgment Entry dismissing Bumpus' case does not contain an explicit finding that Knox County, Ohio is an inconvenient forum. However, it is clear from Ward's motion and Bumpus' response filed in the trial court that, to the extent the trial court considered this issue, the trial court relied upon the doctrine of forum non-conveniens. It does not appear that the trial court considered the contract's forum selection clause.

{¶43} In *Clark v. Consol. Foods Corp.*, 5th Dist. No. CA-4906, 1978 WL 21757 (Dec. 13, 1978), this Court held,

> At the outset, this court determines that the judgment of the trial court is a final appealable order. The judgment entry requires plaintiffs to proceed in a forum outside the State of Ohio or in the alternative the action is to be dismissed without prejudice. The practical effect of this judgment is to preclude plaintiffs, residents of Ohio, from pursuing a legal remedy in the courts of Ohio; consequently, a substantial right of the appellants is adversely affected.

Id. at *2.

**{¶44}** If a trial court decides the issue of jurisdiction without holding an evidentiary hearing, the court must consider the allegations in the pleadings, as well as any other evidentiary materials, in a light most favorable to the party seeking to establish personal jurisdiction, and determine whether that party has set forth a prima facie case for jurisdiction. *Meglan, Meglan & Co., Ltd. v. Abante Corp.,* 10th Dist. No. 07AP-130, 2007-Ohio-5013; *Residential Finance Corp. v. Greenpoint Mortgage Funding, Inc.*, 10th Dist. No. 09AP-497. 2010-Ohio-1322, ¶ 16.

**{¶45}** When determining whether a state court has personal jurisdiction over a nonresident individual, "the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction * * *." *U.S. Sprint Communications Co., L.P. v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 184, 624 N.E.2d 1048, 1051(1994). Therefore, nonresident individuals must have certain "minimum contacts" with the forum state. *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 287, 629 N.E.2d 28, 30(8th Dist. 1993), citing *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95(1945). In order to obtain minimum contacts, the plaintiff must prove that the nonresident defendant "purposely avail[ed himself] of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298(1958).

**{¶46}** R.C. 2307.382 and Civ.R. 4.3(A) provides the governing provisions for the minimum contact analysis. Essentially, R.C. 2307.382 and Civ.R. 4.3(A) are coextensive and "complement each other." *U.S. Sprint* at 184, 624 N.E.2d 1048, quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477(1990). R.C. 2307.382 provides:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might have reasonably expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of the contracting.

**{¶47}** When deciding whether a defendant falls within the reach of the long-arm statute, a court should consider three factors:

First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Cincinnati Art Galleries v. Fatzie*, 70 Ohio App.3d 696, 699, 591 N.E.2d 1336, 1338(1st Dist. 1990), quoting *S. Machine Co. v. Mohasco Industries, Inc.* 401 F.2d 374, 381(6th Cir. 1968).

**{¶48}** Based upon the facts pled in the complaint and briefs submitted it is apparent that Ward conducted business with Bumpus in Knox County, Ohio. Ward engaged in business in Ohio, solicited business in Ohio, availed themselves of the marketplace and secured benefits from Ohio's residents.

**{¶49}** The ultimate inquiry under the doctrine of forum non-conveniens is "where [a] trial will best serve the convenience of the parties and the ends of justice." *Chambers v. Merrell-Dow Pharmaceuticals, Inc.*, 35 Ohio St.3d 123, 519 N.E.2d 370 (1988). The doctrine furnishes criteria that "are to be applied flexibly, with each case turning on its own facts." Id. at 126, 519 N.E.2d 370. These factors may be divided into the private interests of the litigants and factors of public interest involving the courts and citizens of the forum. Id. at 126, 519 N.E.2d 370.

**{¶50}** In the case at bar, a balancing of the private and public factors weigh heavily in support of maintaining Bumpus' action in Knox County, Ohio.

**{¶51}** Thus, the trial court erred in finding Knox County, Ohio to be an inconvenient forum. We express no opinion on the validity or the enforceability of the contracts forum selection or choice of law clauses as the trial court did not consider these clauses in its decision finding Knox County to be a forum non-conveniens.

**{¶52}**  Bumpus' second assignment of error is sustained in its entirety.

**{¶53}**  The judgment of the Knox County Court of Common Pleas is reversed and this case is remanded for further proceedings consistent with this opinion.

By Gwin, J.,

Delaney, P.J., and

Farmer, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

_____

HON. SHEILA G. FARMER

WSG:clw 0907

[Cite as *Bumpus v. Ward*, 2012-Ohio-4674.]

IN THE COURT OF APPEALS FOR KNOX COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MARTHA BUMPUS | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LLOYD WARD, P.C., ET AL | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 2012-CA-5 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Knox County Court of Common Pleas is reversed and this case is remanded for further proceedings consistent with this opinion. Costs to appellee.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. SHEILA G. FARMER